UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

LIBERTY LIFE ASSURANCE
COMPANY OF BOSTON,
   Plaintiff

v.

JOHN RUBASZKO,
   Defendant

)
)
)
)
)
)
)
)
)
)

**05-40142**

CIVIL ACTION NO. _____

## PLAINTIFFS' ORIGINAL COMPLAINT

  Comes Now Plaintiff Liberty Life Assurance Company of Boston ("Liberty Life") and for its Complaint against the Defendant John Rubaszko ("Rubaszko") states as follows:

### Introduction, Venue, Jurisdiction, Parties

  1. Liberty Life's claim against Rubaszko for unjust enrichment is brought pursuant to the federal common law developed in connection with the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq. Liberty Life's claim for equitable relief, specifically a constructive trust, is brought pursuant to 29 U.S.C. § 1132(a)(3). The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

  2. Liberty Life is a corporation incorporated under the laws of the State of Massachusetts with its principal place of business located at 175 Berkeley Street, Boston, Suffolk County, Massachusetts.

  3. Rubaszko is, upon information and belief, an individual who resides at 8 Old Faith Rd., Shrewsbury, Worcester County, Massachusetts, where he may be served with a summons.

RECEIPT # 404638
AMOUNT $ 250.00
SUMMONS ISSUED ✓
LOCAL RULE 4.1_____
WAIVER FORM_____
MCF ISSUED_____
BY DPTY. CLK. _____
DATE 8/18/05

4.  Venue is proper in this District pursuant to 28 U.S.C. §1391 in that a substantial part of the acts, conduct and/or omissions occurred in this District and both Liberty Life and Rubaszko reside in this District.

### Factual Background

5.  Rubaszko was an employee of Fleet Boston Financial Corporation ("Fleet") beginning August 1, 1987.  While employed by Fleet, Rubaszko was a participant in both the short term disability benefits plan sponsored by Fleet (the "Fleet STD Plan") and the long term disability benefits plan sponsored by Fleet (the "Fleet LTD Plan").

6.  While employed at Fleet and while a participant in the Fleet STD Plan and the Fleet LTD Plan, Rubaszko filed a claim for benefits from the Fleet STD Plan.  The claim was approved for payment and Rubaszko received benefits from the Fleet STD Plan.

7.  On July 26, 1999, the claim transitioned to a claim for benefits from the Fleet LTD Plan.[1]  The claim was approved and benefits were paid to Rubaszko beginning July 26, 1999.

8.  The policy governing the LTD Plan states:

To figure the amount of Monthly Benefit:

> 1. – 2. [omitted]
>
> 3. Deduct Benefits from Other Income, (shown in the Benefits from Other Income provision of the coverage), from this amount.

Benefits from Other Income mean those Benefits shown below:

> 1. – 3. [omitted]

---

[1] A true and correct copy of the policy document for the Fleet LTD Plan is attached hereto as Exhibit "A" and incorporated herein.

4. The amount of Disability and/or Retirement Benefits under the United States Social Security Act, the Canada Pension Plan, the Quebec Pension Plan, or any similar plan or act, for which:

   a. the Covered Person receives or is eligible for; and

   b. his spouse, child or children receives or is eligible for because of his disability, or

   c. his spouse, child or children receive or are eligible for because of his eligibility for Retirement Benefits.

9. On June 11, 2001, Rubaszko filed a claim for disability benefits from the Social Security Administration ("SSA"). He was assisted in filing this claim with the SSA by a law firm whose services were paid for by Liberty Life.

10. On both August 11, 1999 and June 18, 2001, Rubaszko signed documents titled "Disability Payment Option[2]," which stated:

> This document was an amplification of provisions in the Liberty Life policy that reduce the monthly disability benefit by the amount of income a benefit recipient receives from other sources, including, "Disability and/or Retirement Benefits under the United States, Social Security Act . . . which the Covered Person receives or is eligible for; . . ." I elect that Liberty Life Assurance Co. of Boston pay me a monthly benefit with no reduction for estimated Social Security benefits until Social Security makes a decision. This may result in an overpayment to me if Social Security subsequently awards benefits to me. I must supply Liberty Life Assurance Co. of Boston with a copy of the Social Security decision and repay any overpayment. If I do not repay this overpayment to Liberty Life Assurance Co. of Boston, Liberty Life Assurance Co. of Boston may withhold future Long Term Disability payments until they have recovered the overpayment, and/or pursue other means permitted by law to collect the amount owed. In addition, if Social Security makes an award, Liberty Life Assurance Co. of Boston will reduce my monthly policy/contract benefit by the amount of Social Security benefits I and my spouse and family receive according to the policy/contract provisions.

---

[2] True and correct copies of these documents are attached hereto as Exhibit "B" and incorporated herein.

11. On January 8, 2002, Rubaszko signed an Authorization, which stated, "If I receive a disability benefit greater than that which I should have been paid, I understand that the Company has the right to recover such overpayment from me, including the right to reduce future disability benefits, or other collection methods as appropriate."[3]

12. On October 22, 2002, Rubaszko was sent a notice from the SSA that he had been awarded disability benefits from the SSA retroactive to July 1999.[4]

13. On October 29, 2002, Liberty Life wrote Rubaszko advising him of the overpayment that will be created once SSA benefits are received. The letter stated, "We strongly suggest you set aside your retroactive payment from Social Security to repay this obligation."[5]

14. On March 3, 2003, Rubaszko was mailed an award letter from the SSA, advising him that he had been awarded benefits. Additionally, the letter stated that Rubaszko would be paid $64,712 in retroactive benefits from July 1999 until December 2002.[6] Subsequently, Rubaszko received these retroactive benefits, along with additional retroactive benefits pertaining to his claim for benefits from the SSA for his dependents. The total retroactive payment received by Rubaszko was $77,922.00.

15. In accordance with the terms of the LTD Plan, Liberty Life withheld the benefits from the LTD Plan to recoup the overpayment created by the retroactive payment Rubaszko received from the SSA. However, only $4,154.22 was recovered prior to the termination of the LTD benefits under the terms of the LTD plan on October 22, 2003. On

---

[3] A true and correct copy of the Authorization is attached hereto as Exhibit "C" and incorporated herein.

[4] A true and correct copy of the SSA Notice is attached hereto as Exhibit "D" and incorporated herein.

[5] A true and correct copy of the letter is attached as Exhibit "E" and incorporated herein.

[6] A true and correct copy of this award letter is attached as Exhibit "F" and incorporated herein.

January 26, 2004, Liberty Life sent a letter to Rubaszko demanding the remaining balance of $73,767.78.[7]  However, the $73,767.78 overpayment created by Rubaszko's retroactive receipt of benefits from SSA has never been repaid to Liberty Life, and $73,767.78 remains due and owing to Liberty Life today.

## COUNT I

### (Unjust Enrichment)

16. Liberty Life realleges and incorporates the provisions of paragraphs 1-15 above, as if fully set forth herein.

17. Pursuant to the terms of the policy, Liberty Life had a clear and reasonable expectation that Rubaszko would reimburse Liberty Life for the overpayment that resulted when Rubaszko received retroactive disability benefits from the SSA.

18. By virtue of the policy document, Rubaszko's execution of the two Disability Payment Options documents, and Liberty Life's October 29, 2002 letter, Rubaszko was clearly aware of the requirement that he reimburse Liberty Life for the overpayment.

19. Fairness and the interests of society are served by allowing Liberty Life to recover the overpayment because Rubaszko was unjustly enriched by retaining the $73,767.78 he received from the SSA rather than repaying it to Liberty Life.  The failure to recognize Liberty Life's right will result in inefficient claims administration and increased costs for disability policies for future participants in such disability plans.

20. Wherefore, Liberty Life prays that the Court order Rubaszko to disgorge and repay to Liberty Life the $73,767.78 unjust enrichment he received and render judgment in favor of Liberty Life in this action in the amount of $73,767.78, plus attorneys' fees, court costs,

---

[7] A true and correct copy of the letter is attached as Exhibit "G" and incorporated herein.

prejudgment and post-judgment interest, and grant Liberty Life such other relief as the Court deems just and proper.

## COUNT II

### (Constructive Trust Pursuant to 29 U.S.C. § 1132(a)(3))

21. Liberty Life realleges and incorporates the provisions of paragraphs 1-15 above, as if fully set forth herein.

22. Liberty Life requests that the Court grant it equitable relief from Rubaszko pursuant to 29 U.S.C. § 1132(a)(3) in the form of a constructive trust. Rubaszko has in his possession $73,767.78 that clearly belongs in good conscience to Liberty Life. Liberty Life has exercised due diligence in its attempts to recover these funds from Rubaszko, but its efforts have been ignored by Rubaszko. Liberty Life has no adequate remedy at law and thus, this Court has jurisdiction pursuant to 29 U.S.C. § 1132(e) to order Rubaszko to convey title and relinquish possession of the $73,767.78 to enforce the terms of the disability plan and address Rubaszko's violation of the plan pursuant to § 1132(a)(3)(B).

23. Wherefore, Liberty Life requests the Court enter the following relief:

A) enter a judgment granting Liberty Life a constructive trust in the $73,767.78 in the possession of Rubaszko;

B) order Rubaszko to transfer title and possession of the $73,767.78 to Liberty Life and entering judgment in favor of Liberty Life for the sum of $73,767.78;

C) award Liberty Life its attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g);

D) award Liberty Life prejudgment and post-judgment interest; and

E) grant Liberty Life such other relief as the Court deems proper and just.

Respectfully submitted,

LIBERTY LIFE ASSURANCE
COMPANY OF BOSTON
By its attorneys,

Guy P. Tully, Esq., BBO# 555625
JACKSON LEWIS LLP
75 Park Plaza, 4th Floor
Boston, MA 02116
PH: (617) 367-0025
FX: (617) 367-2155

*and*

Iwana Rademaekers, Esq.
(*Motion for Pro Hac Vice to be filed*)
Texas Bar No. 16452560

JACKSON LEWIS LLP
3811 Turtle Creek Blvd., Suite 500
Dallas, TX 75219
PH: (214) 520-2400
FX: (214) 520-2008

Dated this *17th* day of August, 2005.

7





# LIBERTY MUTUAL.

Liberty Life Assurance Company
of Boston

## GROUP DISABILITY INCOME POLICY

**Sponsor:**  Fleet Financial Group

**Policy Number:**  GF3-810-252443-01 *

**Effective Date:**  January 1, 1998

Governing Jurisdiction is Rhode Island and subject to the laws of that State.

Premiums are due and payable monthly on the first day of each month.

Policy Anniversaries shall occur each January 1st beginning in 1999.

Liberty Life Assurance Company of Boston (hereinafter referred to as Liberty) agrees to pay the benefits provided by this policy in accordance with its provisions. This policy provides group Long Term Disability coverage.

**PLEASE READ THIS POLICY CAREFULLY FOR FULL DETAILS.**

This policy is a legal contract and is issued in consideration of the Application of the Sponsor, a copy of which is attached, and of the payment of premiums by the Sponsor.

The following pages including any amendments, riders or endorsements are a part of this policy.

Signed at Liberty's Home Office, 175 Berkeley Street, Boston, Massachusetts, 02117.

* Change Policy Number effective August 1, 1998.

*Barry S. Silvos*
SECRETARY

*Edmund F. Kelly*
PRESIDENT

### NON-PARTICIPATING

Form DOP3
GLU-691

EXHIBIT
A

# TABLE OF CONTENTS

SECTION 1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . SCHEDULE OF BENEFITS

SECTION 2. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . DEFINITIONS

SECTION 3. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ELIGIBILITY AND EFFECTIVE DATES

SECTION 4. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . DISABILITY INCOME BENEFITS

SECTION 5. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . EXCLUSIONS

SECTION 6. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . TERMINATION PROVISIONS

SECTION 7. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . GENERAL PROVISIONS

SECTION 8. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PREMIUMS

SECTION 9. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . APPLICATION

## SECTION 1 - SCHEDULE OF BENEFITS

**ELIGIBLE CLASSES FOR INSURANCE BENEFITS:** (Employees of Quick & Reilly/Fleet Securities, Inc. working a minimum of 32 regularly scheduled hours per week and All Employees, except Quick & Reilly/Fleet Securities, Inc. Employees, working a minimum of 20 regularly scheduled hours per week)

**Long Term Disability Benefits:**

All Full-Time and Part-Time Employees who are in Active Employment are eligible for a 24 Month Own Occupation Benefit.

**ELIGIBILITY WAITING PERIOD:**

**Applicable to Branch Managers and Officers at Quick & Reilly/Fleet Securities, Inc.:**

    1.  Present Employees:  First day of Active Employment

    2.  New Employees:  First day of Active Employment

**Applicable to All Employees at Quick & Reilly/Fleet Securities, Inc., except Branch Managers and Officers:**

    1.  Present Employees:  First day of Active Employment

    2.  New Employees:  First of the month coinciding with or next following three months of Active Employment

**Applicable to All Other Employees:**

    1.  Present Employees:  First day of Active Employment

    2.  New Employees:  First day of Active Employment

**EMPLOYEE CONTRIBUTIONS REQUIRED:**  Yes

**NAME OF ASSOCIATED COMPANY(S):**  As on file with the Sponsor

**LONG TERM DISABILITY COVERAGE**

**Elimination Period:**  180 days

**Amount of Insurance Benefits:**

Option 1: 40% (Benefit Percentage) of Basic Monthly Earnings not to exceed a Maximum Monthly Benefit of $18,000. Less Benefits from Other Income as Defined in Section 4

Option 2: 50% (Benefit Percentage) of Basic Monthly Earnings not to exceed a Maximum Monthly Benefit of $18,000. Less Benefits from Other Income as Defined in Section 4

Option 3: 60% (Benefit Percentage) of Basic Monthly Earnings not to exceed a Maximum Monthly Benefit of $18,000. Less Benefits from Other Income as Defined in Section 4

Form DOP3-SCH-0001

General Information/
Long Term Disability

# SECTION 1 - SCHEDULE OF BENEFITS

**LONG TERM DISABILITY COVERAGE** (Continued)

**Maximum Benefit Period:**

| Age at Disability | Maximum Benefit Period |
|---|---|
| Less than age 60............ | To age 65 (but not less than 5 years) |
| 60..................................... | 60 Months |
| 61..................................... | 48 Months |
| 62..................................... | 42 Months |
| 63..................................... | 36 Months |
| 64..................................... | 30 Months |
| 65..................................... | 24 Months |
| 66..................................... | 21 Months |
| 67..................................... | 18 Months |
| 68..................................... | 15 Months |
| 69 and over....................... | 12 Months |

Minimum Monthly Benefit is $0.

Form DOP3-SCH-0002

Long Term Disability

# SECTION 2 - DEFINITIONS

In this section Liberty defines some basic terms needed to understand this policy. The male pronoun whenever used in this policy includes the female.

**"Active Employment"** means the Employee must be actively at work for the Sponsor:

1. on a full-time or part-time basis and paid regular earnings;

2. for at least the minimum number of hours shown in the Schedule of Benefits; and either perform such work:

   a. at the Sponsor's usual place of business; or
   b. at a location to which the Sponsor's business requires the Employee to travel.

An Employee will be considered actively at work if he was actually at work on the day immediately preceding:

1. a weekend (except where one or both of these days are scheduled days of work);
2. holidays (except when such holiday is a scheduled work day);
3. paid vacations;
4. any non-scheduled work day;
5. an excused leave of absence (except medical leave for the Covered Person's own disabling condition and lay-off); and
6. an emergency leave of absence (except emergency medical leave for the Covered Person's own disabling condition).

**"Administrative Office"** means Liberty Life Assurance Company of Boston, 100 Liberty Way, Dover, New Hampshire 03820.

**"Annual Enrollment Period"** or **"Enrollment Period"** means the period before each policy anniversary so designated by the Sponsor and Liberty during which an Employee may enroll for coverage under this policy.

**"Application"** is the document designated Section 9, it is attached to and is made a part of this policy.

**"Basic Monthly Earnings"** or **"Pre-Disability Earnings"** means the Covered Person's monthly rate of base pay from the Sponsor in effect immediately prior to the date Disability or Partial Disability begins. However, such earnings will not include bonuses, commissions, shift differential, overtime pay, any extra fringe benefit and extra or special compensation.

**"Covered Person"** means an Employee insured under this policy.

**"Disability"** or **"Disabled"** means:

1. For persons other than pilots, co-pilots, and crew of an aircraft:

   i. If the Covered Person is eligible for the 24 Month Own Occupation Benefit, **"Disability"** or **"Disabled"** means during the Elimination Period and the next 24 months of Disability the Covered Person is unable to perform all of the material and substantial duties of his occupation on an Active Employment basis because of an Injury or Sickness; and

Definitions

## SECTION 2 - DEFINITIONS
(Continued)

"Disability" or "Disabled" (Continued)

1.  For persons other than pilots, co-pilots, and crew of an aircraft (Continued)

    ii. After 24 months of benefits have been paid, the Covered Person is unable to perform, with reasonable continuity, all of the material and substantial duties of his own or any other occupation for which he is or becomes reasonably fitted by training, education, experience, age and physical and mental capacity.

2.  With respect to Covered Persons employed as pilots, co-pilots and crew of an aircraft:

    "Disability" or "Disabled" means because of Injury or Sickness the Covered Person cannot perform the material and substantial duties of any gainful occupation for which he is or becomes reasonably fitted by training, education, experience, age and physical and mental capacity.

"Disability Benefits", when used with the term Retirement Plan, means money which:

    1.  is payable under a Retirement Plan due to Disability as defined in that plan; and

    2.  does not reduce the amount of money which would have been paid as Retirement Benefits at the normal retirement age under the plan if the Disability had not occurred. (If the payment does cause such a reduction, it will be deemed a Retirement Benefit as defined in this policy.)

"Eligibility Date" means the date an Employee becomes eligible for insurance under this policy. Eligible Classes are shown in the Schedule of Benefits.

"Eligibility Waiting Period" as shown in the Schedule of Benefits means the continuous length of time an Employee must serve in an eligible class to reach his Eligibility Date.

"Elimination Period" means a period of consecutive days of Disability for which no benefit is payable. The Elimination Period is shown in the Schedule of Benefits and begins on the first day of Disability.

If the Covered Person returns to work for any 30 or less days during the Elimination Period and cannot continue, Liberty will count only those days the Covered Person is Disabled to satisfy the Elimination Period.

"Employee" means a person in Active Employment with the Sponsor.

"Evidence of Insurability" means a statement or proof of an Employee's medical history upon which acceptance for insurance will be determined by Liberty.

Definitions

## SECTION 2 - DEFINITIONS
### (Continued)

**"Family Status Change"** means any one of the following events that may occur:

1.  the Employee's marriage or divorce;
2.  the birth of a child to the Employee;
3.  the adoption of a child by the Employee;
4.  the death of the Employee's spouse or child;
5.  the commencement or termination of employment of the Employee's spouse;
6.  the change from part-time employment to full-time employment by the Employee or the Employee's spouse;
7.  the change from full-time employment to part-time employment by the Employee or the Employee's spouse;
8.  the taking of unpaid leave of absence by the Employee or the Employee's spouse.

**"Gross Monthly Benefit"** means the Covered Person's Monthly Benefit before any reduction for Benefits from Other Income and earnings.

**"Initial Enrollment Period"** means one of the following periods during which an Employee may first enroll for coverage under this policy:

1.  for an Employee who is eligible for insurance on the policy effective date, a period before the policy effective date set by the Sponsor and Liberty.

2.  for an Employee who becomes eligible for insurance after the policy effective date, the period which ends 31 days after his eligibility date.

**"Injury"** means bodily impairment resulting directly from an accident and independently of all other causes.

Any Disability which begins more than 60 days after an Injury will be considered a Sickness for the purpose of determining benefits under this policy.

**"Partial Disability"** or **"Partially Disabled"** means as a result of the Injury or Sickness, which caused Disability, the Covered Person is:

1.  able to perform one or more, but not all, of the material and substantial duties of his own or any other occupation on an Active Employment or a part-time basis; or

2.  able to perform all of the material and substantial duties of his own or any other occupation on a part-time basis.

**"Physician"** means a person who:

1.  is licensed to practice medicine and prescribe and administer drugs or to perform surgery; or

2.  is a licensed practitioner of the healing arts in a category specifically favored under the health insurance laws of the State where the policy is delivered and practicing within the terms of his license.

**"Physician"** does not mean the Covered Person or his spouse, daughter, son, father, mother, sister or brother.

## SECTION 2 - DEFINITIONS
### (Continued)

**"Pre-Disability Earnings"** - See definition of Basic Monthly Earnings.

**"Retirement Benefit"**, when used with the term Retirement Plan, means money which:

1.  is payable under a Retirement Plan either in a lump sum or in the form of periodic payments;

2.  does not represent contributions made by an Employee (payments which represent Employee contributions are deemed to be received over the Employee's expected remaining life regardless of when such payments are actually received); and

3.  is payable upon:

    a.  early or normal retirement; or

    b.  Disability, if the payment does reduce the amount of money which would have been paid under the plan at the normal retirement age.

**"Retirement Plan"** means a plan which provides Retirement Benefits to Employees and which is not funded wholly by Employee contributions. The term shall not include: a profit-sharing plan, informal salary continuation plan, registered retirement savings plan, stock ownership plan, or a non-qualified plan of deferred compensation.

**"Schedule of Benefits"** means the section of this policy which shows, among other things, the Eligible Classes, Eligibility Waiting Period, Elimination Period, Amount of Insurance, Minimum Benefit, and Maximum Benefit Period.

**"Sickness"** means illness, disease, pregnancy or complications of pregnancy.

**"Sponsor"** means the entity to whom the policy is issued.

**"Sponsor's Retirement Plan"** is deemed to include any Retirement Plan:

1.  which is part of any Federal, State, Municipal or Association retirement system; or

2.  for which the Employee is eligible as a result of employment with the Sponsor.

**"Monthly Benefit"** means the amount payable by Liberty to the Disabled or Partially Disabled Covered Person. Benefits for Long Term Disability coverage are determined on a monthly basis.

# SECTION 3 - ELIGIBILITY AND EFFECTIVE DATES

**Eligible Classes for Insurance Benefits**

The Eligible Classes for Insurance Benefits are shown in the Schedule of Benefits.

**Eligibility Date for Insurance Benefits**

An Employee in an eligible class will qualify for insurance on the later of:

1.  this policy's Effective Date; or

2.  the day after the Employee completes the Eligibility Waiting Period shown in the Schedule of Benefits.

**Enrollment**

An Employee may enroll in or change coverage only during an Initial or Annual Enrollment Period or because of a Family Status Change as follows:

1.  **Initial Enrollment Period**

    During the Initial Enrollment Period an Employee can enroll in any one coverage or coverage option shown in the Schedule of Benefits. If he does not choose any coverage or coverage option, he will not be enrolled for any coverage. If an Employee's Initial Enrollment Period takes place during or after the Annual Enrollment Period, but before the policy anniversary his coverage option will apply for (a) the rest of the policy year in which he first becomes eligible; and (b) the next policy year.

2.  **Annual Enrollment Period**

    During each Annual Enrollment Period, a Covered Person may make any one of the following changes in coverage for the next policy year:

    a.  a decrease in coverage;

    b.  an increase in coverage by two levels without evidence of insurability subject to the Pre-Existing Condition Exclusion defined herein; or

    c.  keep his coverage at the same level.

    If a Covered Person fails to enroll for a change in his coverage option during any Annual Enrollment Period he will continue to be insured for the same coverage option during the next policy year and no change in that coverage can be made during the next policy year, unless the Covered Person experiences a Family Status Change.

## SECTION 3 - ELIGIBILITY AND EFFECTIVE DATES
### (Continued)

**Enrollment** (Continued)

**Annual Enrollment Period** (Continued)

3.  Family Status Change

When an Employee experiences a Family Status change, he may enroll for coverage within 31 days of the date of the Family Status Change.  When a Covered Person experiences a Family Status Change, he may:

a.  decrease his coverage;

b.  increase his coverage by two levels without evidence of insurability subject to the Pre-Existing Condition Exclusion defined herein; or

c.  keep his coverage at the same level.

The Covered Person must apply for the change in coverage within 31 days of the date of the Family Status Change.  Such changes in coverage must be on account of or consistent with the reason that the change in coverage was permitted.  A change in coverage is consistent with a Family Status Change only if it is necessary or appropriate as the result of the Family Status Change.

**Effective Dates of Insurance**

1.  Insurance will be effective at 12:01 A.M. Standard Time in the governing jurisdiction on the day determined as follows, but only if the Employee's written application for insurance is:

a.  made with Liberty through the Sponsor; and

b.  on a form satisfactory to Liberty.

2.  For Coverage Applied For During Initial Enrollment Periods:

An Employee will become insured for non-contributory insurance on his eligibility date.

An Employee will become insured for any other contributory coverage on the Employee's eligibility date if he enrolls on or before the 31st day after his date of eligibility.

An Employee who does not enroll for any contributory coverage on or before the 31st day after his eligibility date, or terminated his insurance while continuing to be eligible must submit an application and Evidence of Insurability to Liberty for approval, at the Employee's expense. The Employee will become insured on the date Liberty gives its approval.

## SECTION 3 - ELIGIBILITY AND EFFECTIVE DATES
(Continued)

**Effective Dates of Insurance (Continued)**

3. For Contributory Coverage Applied For During Annual Enrollment Periods, an Employee will be insured for the selected contributory coverage on the later of these dates:

   a. on the first day of the next policy anniversary; or

   b. on the date Liberty gives its approval if the Employee is required to submit Evidence of Insurability to Liberty, at his expense, due to:

      i. an increase in a Covered Person's coverage option; or
      ii. a Covered Person terminated his insurance while continuing to be eligible.

4. For Coverage Applied For Due To A Family Status Change

   An Employee will become insured for the selected coverage on the later of the following dates, provided he enrolls or applies for the change in coverage before the 31st day following the Family Status Change:

   a. the date of the Family Status Change;

   b. the date the Employee enrolls or applies for the change in coverage; or

   c. the date Liberty gives its approval if the Employee is required to submit Evidence of Insurability to Liberty, at his expense, due to:

      i. an increase in a Covered Person's coverage option; or
      ii. a Covered Person terminated his insurance while continuing to be eligible.

5. Delayed Effective Date for Insurance - The Effective Date of any initial, increased or additional insurance will be delayed for an individual if he is not in Active Employment because of Injury or Sickness. The initial, increased or additional insurance will start on the date the individual returns to Active Employment.

6. If a Covered Person enters another eligible class for reasons other than a change in his coverage option, he will not be eligible for any additional benefits until he has been in Active Employment as a member of such class for a period of 30-days.

# SECTION 3 - ELIGIBILITY AND EFFECTIVE DATES
(Continued)

**Associated Companies**

Companies, corporations, firms or individuals that are subsidiary to, or affiliated with, the Sponsor will be called Associated Companies. The Associated Companies, if any, are listed in the Schedule of Benefits. Employees of Associated Companies will be considered Employees of the Sponsor for purposes of this policy.

As they relate to this policy, all actions, agreements and notices between Liberty and the Sponsor will be binding on the Associated Companies.

If an Associated Company ceases to be an Associated Company for any reason, its Employees will be deemed to have transferred to a class of Employees not eligible for coverage under this policy.

## SECTION 3 - ELIGIBILITY AND EFFECTIVE DATES
### (Continued)

**Transfer Provision**

In order to prevent loss of coverage for an individual because of a transfer of insurance carriers, this policy will provide coverage for certain individuals as follows:

**Failure to be in Active Employment due to Injury or Sickness**

This policy will cover, subject to premium payments, individuals:

1.  insured by the prior carrier at the time of transfer; and

2.  who are not in Active Employment due to Injury or Sickness on the Effective Date of the policy.

The benefit payable will be in accordance with the provisions of this policy, less any benefit for which the prior carrier is liable. However, in no event will the benefit payable be greater than that which would have been paid under the prior carrier's benefit schedule.

**Disability due to a Pre-Existing Condition**

If there is a Pre-Existing Condition Exclusion, a benefit may be payable for a Disability due to a Pre-Existing Condition for an individual who:

1.  was insured by the prior carrier at the time of transfer; and

2.  was in Active Employment and insured under this policy on its Effective Date.

The benefit will be determined as follows:

1.  Liberty will apply this policy's pre-existing condition exclusion. If the individual qualifies for a benefit, he will be paid according to this policy's benefit schedule.

2.  If the individual cannot satisfy this policy's pre-existing condition exclusion, the prior carrier's pre-existing condition exclusion will be applied.

    a.  If the individual satisfies the prior carrier's pre-existing condition exclusion, giving consideration towards continuous time insured under both policies, he will be paid according to this policy's benefit schedule. However, in no event will the benefit payable be greater than that which would have been paid under the prior carrier's benefit schedule.

    b.  If he cannot satisfy the pre-existing condition exclusion of this policy or that of the prior carrier, no benefit will be paid.

# SECTION 4 - DISABILITY INCOME BENEFITS

## LONG TERM DISABILITY COVERAGE

### Disability Benefit

When Liberty receives proof that a Covered Person is Disabled due to Injury or Sickness and requires the regular attendance of a Physician, Liberty will pay the Covered Person a Monthly Benefit after the end of the Elimination Period. The benefit will be paid for the period of Disability if the Covered Person gives to Liberty proof of continued:

1. Disability; and

2. regular attendance of a Physician.

The proof must be given upon Liberty's request and at the Covered Person's expense.

For the purpose of determining Disability, the Injury must occur and Disability must begin while the Employee is insured for this coverage. In addition, a loss of a license for any reason does not, in itself, constitute Disability.

The Monthly Benefit will not:

1. exceed the Covered Person's Amount of Insurance; nor

2. be paid for longer than the Maximum Benefit Period.

The Amount of Insurance and the Maximum Benefit Period are shown in the Schedule of Benefits.

### Amount of Disability Monthly Benefit

To figure the amount of Monthly Benefit:

1. Multiply the Covered Person's Basic Monthly Earnings by the Benefit Percentage shown in the Schedule of Benefits.

2. Take the lesser of:

   a. the amount figured in step (1) above; or

   b. the Maximum Monthly Benefit shown in the Schedule of Benefits; and then

3. Deduct Benefits from Other Income, (shown in the Benefits from Other Income provision of this coverage), from this amount.

The Disability Benefit payable will never be less than the Minimum Monthly Benefit shown in the Schedule of Benefits.

## SECTION 4 - DISABILITY INCOME BENEFITS
### (Continued)

**LONG TERM DISABILITY COVERAGE** (Continued)

**Partial Disability Benefit**

To qualify for a Partial Disability Benefit the Covered Person must be earning less than 80% of his Pre-Disability Earnings at the time he returns to Partial Employment.

If the Covered Person is earning less than 20% of his or her Pre-Disability Earnings, the Disability Benefit will be paid, and all other benefit provisions and terms applicable to Disability will apply as stated in this Plan.

When proof is received that a Covered Person is Partially Disabled from an Injury or Sickness, Liberty will pay a Partial Disability Benefit if the Covered Person:

1. is employed in his own occupation or another occupation and has satisfied the Elimination Period, and

2. gives to Liberty upon request and at the Covered Person's expense, proof of continued:

   a. Partial Disability, and

   b. the required regular attendance of a Physician.

For the purposes of this provision, the Covered Person may satisfy the Elimination Period if he or she is Disabled or Partially Disabled, or a combination of Disabled or Partially Disabled, during such time.

For the purpose of determining Partial Disability, the Injury must occur and Partial Disability must begin while the Employee is insured for this coverage. In addition, a loss of license for any reason any reason does not, in itself, constitute Partial Disability.

**Amount of Partial Disability Monthly Benefit - Work Incentive Benefit**

If the Covered Person is eligible for benefits under the Partial Disability Program, during the first 12 months, Liberty will pay a Work Incentive Benefit.

The Work Incentive Benefit will be equal to the Covered Person's Pre-Disability Earnings multiplied by the Benefit Percentage shown in the Plan Specifications, without any reductions from earnings.

The Work Incentive Benefit will only be reduced, if the Monthly Benefit payable plus any earnings exceed 100% of the Covered Person's Pre-Disability Earnings. If the combined total is more, the Monthly Benefit will be reduced by the excess amount so that the Monthly Benefit plus the Covered Person's earnings does not exceed 100% of his or her Pre-Disability earnings.

## SECTION 4- DISABILITY INCOME BENEFITS
### (Continued)

**LONG TERM DISABILITY COVERAGE** (Continued)

**Amount of Partial Disability Monthly Benefit - Work Incentive Benefit** (Continued)

Thereafter, to figure the amount of Monthly Benefit:

1.  Multiply the Covered Person's indexed Pre-Disability Earnings by the Benefit Percentage shown in the Schedule of Benefits.

2.  Take the lesser of:

    a.  the amount determined in step (1) above; or

    b.  100% of the Covered Person's indexed Pre-Disability Earnings less Benefits from Other Income, (shown in the Benefits from Other Income provision of this coverage); or

    c.  the Maximum Monthly Benefit shown in the Schedule of Benefits.

**"Indexed Pre-Disability Earnings"** when used in this policy means the Covered Person's Pre Disability Earnings adjusted annually by adding the lesser of:

1.  10%; or

2.  the percentage change in the Consumer Price Index (CPI-W).

The adjustment is made January 1st of each year after the Covered Person has been Disabled for 12 consecutive months, and if the Covered Person is receiving benefits at the time the adjustment is made.

The term "Consumer Price Index" (CPI-W) means the index for Urban Wage Earners and Clerical Workers published by the United States Department of Labor. It measures on a periodic basis the change in the cost of typical urban wage earners' and clerical workers' purchase of certain goods and services. If the index is discontinued or changed, Liberty may use another nationally published index that is comparable to the CPI-W.

For the purposes of this benefit, the percentage change in the DPI-W means the difference between the current year's CPI-W as of July 31, and the prior year's CPI-W as of July 31, divided by the prior year's CPI-W.

## SECTION 4 - DISABILITY INCOME BENEFITS
(Continued)

**LONG TERM DISABILITY COVERAGE** (Continued)

**Mental Illness and Alcohol or Drug Abuse Limitation**

The Benefit for Disability due to Mental Illness and Alcohol or Drug Abuse will not exceed 24 months of Monthly Benefit payments unless the Covered Person meets one of these situations.

1.  The Covered Person is in a Hospital or Institution for Mental Illness and Alcohol or Drug Abuse at the end of the 24 month period. The Monthly Benefit will be paid during the confinement.

    If the Covered Person is still Disabled when he is discharged, the Monthly Benefit will be paid for a recovery period up to 90 days.

    If the Covered Person becomes reconfined during the recovery period for at least 14 days in a row, benefits will be paid for the confinement and another recovery period up to 90 more days.

2.  The Covered Person continues to be Disabled and becomes confined for the Mental Illness and Alcohol or Drug Abuse:

    a.  after the 24 month period; and

    b.  for at least 14 days in a row.

The Monthly Benefit will be payable during the confinement for the Mental Illness and Alcohol or Drug Abuse.

The Monthly Benefit will not be payable beyond the Maximum Benefit Period.

"Hospital" or "Institution" means a facility licensed to provide care and Treatment for the condition causing the Covered Person's Disability.

"Mental Illness" means mental, nervous or emotional diseases or disorders of any type.

# SECTION 4 - DISABILITY INCOME BENEFITS
(Continued)

**LONG TERM DISABILITY COVERAGE** (Continued)

**Benefits from Other Income**

Benefits from Other Income means those benefits shown below:

1. The amount for which the Covered Person is eligible under:

   a. Workers' or Workmen's Compensation Law;

   b. occupational disease law;

   c. any compulsory benefit act or law; or

   d. any other act or law of like intent.

2. The amount of any disability benefits which the Covered Person is eligible to receive under:

   a. any other group insurance plan of the Sponsor;

   b. any governmental retirement system as a result of his job with the Sponsor.

3. The amount of benefits the Covered Person receives under the Sponsor's Retirement Plan as follows:

   a. any Disability Benefits; or

   b. any Retirement Benefits.

4. The amount of Disability and/or Retirement Benefits under the United States Social Security Act, the Canada Pension Plan, the Quebec Pension Plan, or any similar plan or act, for which:

   a. the Covered Person receives or is eligible for; and

   b. his spouse, child or children receives or are eligible for because of his Disability; or

   c. his spouse, child or children receives or are eligible for because of his eligibility for Retirement Benefits.

5. The amount of earnings the Covered Person earns or receives from any form of employment.

These Benefits from Other Income, except Retirement Benefits, must be payable as a result of the same Disability for which Liberty pays a benefit.

Form DOP3-LTD-0012

Primary and Family Integration

## SECTION 4 - DISABILITY INCOME BENEFITS
### (Continued)

### LONG TERM DISABILITY COVERAGE (Continued)

#### Cost of Living Freeze

After the first deduction for each of the Benefits from Other Income, the Monthly Benefit will not be further reduced due to any cost of living increases payable under the Benefits from Other Income provision of this coverage. This provision does not apply to increases received from any form of employment.

#### Lump Sum Payments

Benefits from Other Income which are paid in a lump sum will be prorated on a monthly basis over the time period for which the sum is given or the Maximum Benefit Period, whichever is less.

#### Prorated Benefits

For any period which a Long Term Disability Benefit is payable that does not extend through a full month, the benefit will be paid on a prorated basis. The rate will be 1/30th per day for such period of Disability.

#### Benefit Period Extension

The Maximum Benefit Period is shown in the Schedule of Benefits. However, the benefit will be extended beyond the end of the Maximum Benefit Period if a Covered Person who is Disabled attains the age specified in the benefit duration and has not received 12 Monthly Benefit payments. In this event, the benefit period will be extended during the continuance of Disability until 12 monthly payments have been paid.

#### Discontinuation of Long Term Disability Benefits

The Monthly Benefit will cease on the earliest of:

1. the date the Covered Person is no longer Disabled; or

2. the date the Covered Person dies; or

3. the end of the Maximum Benefit Period; or

4. the date the Covered Person's current earnings exceed 80% of his Indexed Pre-Disability Earnings.

Because the Covered Person's current earnings may fluctuate, Liberty may average earnings over three (3) consecutive months rather than immediately terminating his benefit once 80% of Indexed Pre-Disability Earnings has been reached.

# SECTION 4 - DISABILITY INCOME BENEFITS
## (Continued)

**LONG TERM DISABILITY COVERAGE** (Continued)

**Successive Periods of Disability**

With respect to this coverage, "**Successive Periods of Disability**" means a Disability which is related or due to the same cause(s) as a prior Disability for which a Monthly Benefit was payable.

A Successive Period of Disability will be treated as part of the prior Disability if, after receiving Disability Benefits under this coverage, a Covered Person:

1.  returns to his own occupation on an Active Employment basis for less than six continuous months; and

2.  performs all the material and substantial duties of his own occupation.

To qualify for a Successive Periods of Disability Benefit, the Covered Person must experience more than a 20% loss of Pre-Disability Earnings.

Benefit payments will be subject to the terms of this coverage for the prior Disability.

If a Covered Person returns to his own occupation on an Active Employment basis for six continuous months or more, the Successive Period of Disability will be treated as a new period of Disability. The Covered Person must complete another Elimination Period.

If a Covered Person becomes eligible for coverage under any other group Long Term Disability coverage, this Successive Period of Disability provision will cease to apply to that Covered Person.

# SECTION 4 - DISABILITY INCOME BENEFITS
(Continued)

**LONG TERM DISABILITY COVERAGE** (Continued)

**Three Month Survivor Benefit**

Liberty will pay a lump sum benefit to the Eligible Survivor when proof is received that a Covered Person died:

1. after Disability had continued for 180 or more consecutive days; and

2. while receiving a Monthly Benefit.

The lump sum benefit will be an amount equal to three times the Covered Person's Last Monthly Benefit.

"**Eligible Survivor**" means the Covered Person's spouse, if living, otherwise the Covered Person's children under age 25.

If payment becomes due to the Covered Person's children, payment will be made in equal shares to:

1. the children; or

2. a person named by Liberty to receive payment on the children's behalf. This payment will be valid and effective against all claims by others representing or claiming to represent the children.

"**Last Monthly Benefit**" means the Monthly Benefit paid to the Covered Person immediately prior to his death without any reduction for earnings received from employment.

## SECTION 4 - DISABILITY INCOME BENEFITS
(Continued)

**LONG TERM DISABILITY COVERAGE** (Continued)

**Minimum Indemnity for Accidental Dismemberment and Loss of Sight**

If Injury results in any of the losses listed in the Schedule below, the Disability Monthly Benefit will be paid to the Covered Person for the number of monthly payments shown in this Schedule.

The loss must:

1.  result from an Injury caused by an accident which occurred while the Employee was insured for this benefit;

2.  result from that Injury directly and independently of all other causes; and

3.  occur within 100 days after the accident.

If death occurs before all of these payments have been made, the balance remaining at the time of death will be paid to the Covered Person's estate.

### SCHEDULE

| For loss of | Minimum Number of Monthly Payments |
|---|---|
| Sight of Both Eyes | 46 |
| Hands | 46 |
| Both Feet | 46 |
| One Hand and One Foot | 46 |
| One Hand and Sight of One Eye | 46 |
| One Foot and Sight of One Eye | 46 |
| One Hand or One Foot | 23 |
| Sight of One Eye | 15 |
| Thumb and Index Finger of Either Hand | 12 |

The maximum number of monthly payments payable to any Covered Person for all losses suffered in any one accident shall be limited to that one loss for which the greatest number of monthly payments is provided in the above Schedule.

Loss of hands and feet means loss by severance at or above the wrist or ankle joint. Loss of sight means total and irrecoverable loss of sight. Loss of thumb and index finger means actual severance at or above the knuckles joining each to the hand.

A benefit may be payable for a period in excess of the number of months indicated in the above Schedule provided that the Covered Person is Disabled.

Form DOP3-LTD-0023                                          Minimum Indemnity Provision

# SECTION 5 - EXCLUSIONS

## GENERAL EXCLUSIONS

This policy will not cover any Disability due to:

1. war, declared or undeclared or any act of war;

2. intentionally self-inflicted injuries, while sane or insane;

3. active Participation in a Riot;

4. the Covered Person's committing of or the attempting to commit an indictable offense.


With respect to this provision, **Participation** shall include promoting, inciting, conspiring to promote or incite, aiding, abetting, and all forms of taking part in, but shall not include actions taken in defense of public or private property, or actions taken in defense of the person of the insured, if such actions of defense are not taken against persons seeking to maintain or restore law and order including, but not limited to police officers and firemen.


With respect to this provision, Riot shall include all forms of public violence, disorder or disturbance of the public peace, by three or more persons assembled together, whether or not acting with a common intent and whether or not damage to persons or property or unlawful act or acts is the intent or the consequence of such disorder.

# SECTION 5 - EXCLUSIONS
## (Contined)

**LONG TERM DISABILITY COVERAGE**

Pre-Existing Condition Exclusion (s)

This policy will not cover any Disability or Partial Disability:

1.  which is caused or contributed to by, or results from a Pre-Existing Condition; and

2.  which begins in the first 12 months after the Covered Person's Effective Date, unless he received no Treatment of the condition for three consecutive months after his Effective Date.

"Pre-Existing Condition" means a condition resulting from an Injury or Sickness for which the Covered Person is diagnosed or received Treatment within three months prior to the Covered Person's Effective Date.

"Treatment" means consultation, care or services provided by a Physician including diagnostic measures and taking prescribed drugs and medicines.

For Employees who increase their coverage option during an Annual Enrollment Period or due to a Family Status Change:

This policy will not cover the increase in amount of coverage for any Disability or Partial Disability:

1.  which is caused or contributed to by, or results from a Pre-Existing Condition; and

2.  which begins in the first 12 months after the Covered Person's Effective Date of increased coverage, unless he received no Treatment of the condition for three consecutive months after his Effective Date of increased coverage.

"Pre-Existing Condition" means a condition resulting from an Injury or Sickness for which the Covered Person is diagnosed or received Treatment within three months prior to the Covered Person's Effective Date of increased coverage.

"Treatment" means consultation, care or services provided by a Physician including diagnostic measures and taking prescribed drugs and medicines.

# SECTION 6 - TERMINATION PROVISIONS

**Termination of Covered Person's Insurance**

A Covered Person will cease to be insured on the earliest of the following dates:

1. the date this policy terminates, but without prejudice to any claim originating prior to the time of termination;

2. the date the Covered Person is no longer in an eligible class;

3. the date the Covered Person's class is no longer included for insurance;

4. the last day for which any required Employee contribution has been made;

5. the date employment terminates. Cessation of Active Employment will be deemed termination of employment, except the insurance will be continued for an Employee absent due to Disability during:

   a. the Elimination Period; and

   b. the period during which premium is being waived.

6. the date the Covered Person ceases active work due to a labor dispute, including any strike, work slowdown, or lockout.

Liberty reserves the right to review and terminate all classes insured under this policy if any class(es) cease(s) to be covered.


**Lay-off or Leave of Absence**

The Sponsor may continue the Covered Person's coverage(s) by paying the required premiums, if the Covered Person is:

1. temporarily laid off; or

2. given leave of absence.

The Covered Person's coverage will not continue beyond the end of the policy month in which the lay-off or leave of absence begins. In continuing such coverage under this provision, the Sponsor agrees to treat all Covered Persons equally.

# SECTION 6 - TERMINATION PROVISIONS
(Continued)

**Policy Termination**

1.  Termination of this policy under any conditions will not prejudice any claim which occurs while this policy is in force.

2.  If the Sponsor fails to pay any premium within the grace period, this policy will terminate at 12:00 midnight Standard Time on the last day of the grace period.  The Sponsor may terminate this policy by advance written notice delivered to Liberty at least 31 days prior to the termination date.  This policy will not terminate during any period for which premium has been paid.  The Sponsor will be liable to Liberty for all premiums due and unpaid for the full period for which this policy is in force.

3.  Liberty may terminate this policy on any premium due date by giving written notice to the Sponsor at least 120 days in advance if:

    a.  the number of Employees insured is less than 10; or

    b.  less than 100% of all the Employees eligible for any non-contributory insurance are insured for it; or

    c.  less than 50% of all the Employees eligible for any contributory insurance are insured for it; or

    d.  the Sponsor fails:

        i.   to furnish promptly any information which Liberty may reasonably require; or

        ii.  to perform any other obligations pertaining to this policy.

4.  Liberty may terminate this policy or any coverage(s) afforded hereunder and for any class of covered Employees on any premium due date after it has been in force for 12 months.  Liberty will provide written notice of such termination to the Sponsor at least 120 days before it is effective.

5.  Termination may take effect on an earlier date if agreed to by the Sponsor and Liberty.

## TERMINATION OF COVERAGE OPTION(S)

**Participation Requirements**

Liberty may terminate any coverage option(s) afforded hereunder and for any class of covered Employees on any premium due date by giving written notice to the Sponsor at least 120 days in advance if less than 50% of the Employees eligible for such coverage option are insured for it.  Termination may take effect on an earlier date if agreed to by the Sponsor and Liberty.

# SECTION 7 - GENERAL PROVISIONS

## Statements

In the absence of fraud, all statements made in any signed Application are considered representations and not warranties (absolute guarantees). No representation by:

1. the Sponsor in applying for this policy will make it void unless the representation is contained in the signed Application; or

2. any Employee in applying for insurance under this policy will be used to reduce or deny a claim unless a copy of the application for insurance, signed by the Employee, is or has been given to the Employee.

## Complete Contract - Policy Changes

1. This policy is the complete contract. It consists of:

   a. all of the pages;
   b. the attached signed Application of the Sponsor;
   c. if contributory each Employee's signed application for insurance.

2. This policy may be changed in whole or in part. Only an officer of Liberty can approve a change. The approval must be in writing and endorsed on or attached to this policy.

3. No other person, including an agent, may change this policy or waive any part of it.

## Employee's Certificate

Liberty will provide a Certificate to the Sponsor for delivery to each Covered Person. It will state:

1. the name of the insurance company and the policy number;
2. a description of the insurance provided;
3. the method used to determine the amount of benefits;
4. to whom benefits are payable;
5. limitations or reductions that may apply;
6. the circumstances under which insurance terminates; and
7. the rights of the Covered Person upon termination of this policy.

If the terms of a Certificate and this policy differ, this policy will govern.

## Interpretation of the Policy

Liberty shall possess the authority, in its sole discretion, to construe the terms of this policy and to determine benefit eligibility hereunder. Liberty's decisions regarding construction of the terms of this policy and benefit eligibility shall be conclusive and binding.

# SECTION 7 - GENERAL PROVISIONS
## (Continued)

### Furnishing of Information - Access to Records

1. The Sponsor will furnish at regular intervals to Liberty:

   a. information relative to Employees:

      i.   who qualify to become insured;
      ii.  whose amounts of insurance change; and/or
      iii. whose insurance terminates.

   b. any other information about this policy that may be reasonably required.

   The Sponsor's records which, in the opinion of Liberty, have a bearing on the insurance will be opened for inspection at any reasonable time.

2. Clerical error or omission will not:

   a. deprive an Employee of insurance;
   b. affect an Employee's Amount of Insurance; or
   c. effect or continue an Employee's insurance which otherwise would not be in force.

### Misstatement of Age

If a Covered Person's age has been misstated, an equitable adjustment will be made in the premium. If the amount of the benefit is dependent upon an Employee's age, the amount of the benefit will be the amount an Employee would have been entitled to if his correct age were known.

A refund of premium will not be made for a period more than 12 months before the date Liberty is advised of the error.

### Notice and Proof of Claim

1. Notice

   a. Written notice of claim must be given to Liberty within 30 days of the date of the loss on which the claim is based, if that is possible. If that is not possible, Liberty must be notified as soon as it is reasonably possible to do so.

   b. When Liberty has the written notice of claim, Liberty will send the Covered Person its claim forms. If the forms are not received within 15 days after written notice of claim is sent, the Covered Person can send Liberty written proof of claim without waiting for the form.

# SECTION 7 - GENERAL PROVISIONS
## (Continued)

### Notice and Proof of Claim (Continued)

2. Proof

   a. Proof of claim must be given to Liberty. This must be done no later than 30 days after the end of the Elimination Period.

   b. Failure to furnish such proof within such time shall not invalidate nor reduce any claim if it was not reasonably possible to furnish such proof within such time. Such proof must be furnished as soon as reasonably possible.

   c. Proof of continued Disability or Partial Disability, when applicable, and regular attendance of a Physician must be given to Liberty within 30 days of the request for the proof.

   d. The proof must cover, when applicable:

      i.   the date Disability or Partial Disability started;
      ii.  the cause of Disability or Partial Disability; and
      iii. the degree of Disability or Partial Disability.

### Time of Payment of Claims

When Liberty receives satisfactory proof of claim, the benefit payable under this policy may be paid at least monthly, depending on the coverage for which claim is made, during any period for which Liberty is liable. Any balance remaining unpaid upon the termination of the period of liability will be paid immediately upon receipt of due written proof.

### Payment of Claims

The benefit is payable to the Covered Person. But, if a benefit is payable to a Covered Person's estate, a Covered Person who is a minor, or who is not competent, Liberty has the right to pay up to $2,000 to any of the Covered Person's relatives or any other person whom Liberty considers entitled thereto by reason of having incurred expense for the maintenance, medical attendance or burial of the Covered Person. If Liberty, in good faith, pays the benefit in such a manner, Liberty will not have to pay such benefit again.

### Examination

Liberty, at its own expense, will have the right and opportunity to have a Covered Person, whose Injury or Sickness is the basis of a claim, examined by a Physician or vocational expert of its choice. This right may be used as often as reasonably required.

## SECTION 7 - GENERAL PROVISIONS
### (Continued)

**Legal Proceedings**

A claimant or the claimant's authorized representative cannot start any legal action:

1.  until 60 days after proof of claim has been given; nor

2.  more than one year after the time proof of claim is required.

**Right of Recovery**

If a benefit overpayment on any claim occurs, it will be required that reimbursement be made to Liberty within 60 days of such overpayment, or Liberty has the right to reduce future benefit payments until such reimbursement is received.  Liberty has the right to recover such overpayments from the Covered Person or the Covered Person's estate.

**Conformity with State Statutes**

Any provision of this policy which, on its Effective Date, is in conflict with the statutes of the governing jurisdiction of this policy is hereby amended to conform to the minimum requirements of such statute.

**Incontestability**

The validity of this policy shall not be contested, except for non-payment of premiums, after it has been in force for two years from the date of issue.  The validity of this policy shall not be contested on the basis of a statement made relating to insurability by any person covered under this policy after such insurance has been in force for two years during such person's lifetime, and shall not be contested unless the statement is contained in a written instrument signed by the person making such statement.

**Canadian Exposure**

With respect to a Covered Person domiciled in Canada: (a) premium and benefit amounts will be deemed to be expressed in Canadian currency; (b) policy provisions concerning the rights of the Covered Person(s) are subject to applicable provincial statutes; and (c) with respect to benefits, an action under this policy may be brought in any court in the province where the Covered Person is domiciled.

**Workers' Compensation**

This policy and the coverages provided are not in lieu of, nor will they affect any requirements for coverage under any Workers' Compensation Law or other similar law.

# SECTION 7 - GENERAL PROVISIONS
## (Continued)

### Subrogation

When a Covered Person's Injury appears to be someone else's fault, benefits otherwise payable under this policy for loss of time as a result of that Injury will not be paid unless the Covered Person or his legal representative agrees:

1.  to repay Liberty for such benefits to the extent they are for losses for which compensation is paid to the Covered Person by or on behalf of the person at fault;

2.  to allow Liberty a lien on such compensation and to hold such compensation in trust for Liberty; and

3.  to execute and give to Liberty any instruments needed to secure the rights under 1. and 2. above.

Further, when Liberty has paid benefits to or on behalf of the injured Covered Person, Liberty will be subrogated to all rights of recovery that the Covered Person has against the person at fault. These subrogation rights will extend only to recovery of the amount Liberty has paid. The Covered Person must execute and deliver any instruments needed and do whatever else is necessary to secure those rights to Liberty.

# SECTION 8 - PREMIUMS

## Premium Rates

Liberty has set the premiums that apply to the coverage(s) provided under this policy. Those premiums are shown in a notice given to the Sponsor with or prior to delivery of this policy.

Liberty may establish new rates for all future premiums as well as the one then due:

1. when the terms of this policy are changed, any such change in policy terms will be made in accord with the General Provisions regarding "Complete Contract - Policy Changes";

2. when a division, or Associated Company is added to this policy; or

3. when the number of Covered Persons changes by 25% or more from the number insured on this policy's Effective Date; or

4. for reasons other than 1., 2., or 3. above, such as, but not limited to a change in factors bearing on the risk assumed. But, the rates may not be changed within the first 12 months following this policy's Effective Date.

No premium may be increased unless Liberty notifies the Sponsor at least 31 days in advance. Premium increases may take effect on an earlier date when both Liberty and the Sponsor agree.

## Payment of Premiums

1. All premiums due under this policy, including adjustments, if any, are payable by the Sponsor on or before their due dates at Liberty's Administrative Office, or to Liberty's agent. The due dates are specified on the first page of this policy.

2. Premium payment calculations will be based on the coverage(s) provided under this policy. Both are determined by the definition of Basic Monthly Earnings.

3. All payments made to or by Liberty shall be in United States dollars, except with respect to Canadian residents covered under this policy. All payments made to or by Liberty for such individuals must be in Canadian funds.

4. If premiums are payable on a monthly basis, premiums for additional or increased insurance becoming effective during a policy month will be charged from the next premium due date.

## SECTION 8 - PREMIUMS
### (Continued)

**Payment of Premiums (Continued)**

5.  The premium charge for insurance terminated during a policy month will cease at the end of the policy month in which such insurance terminates.  This manner of charging premium is for accounting purposes only.  It will not extend insurance coverage beyond a date it would have otherwise terminated as shown in the "Termination of Covered Person's Insurance" provision of this policy.

6.  If premiums are payable on other than a monthly basis, premiums for additional, increased, reduced or terminated insurance will cause a prorated adjustment on the next premium due date.

7.  Except for fraud and premium adjustments, refunds or charges will be made only for:

    a.  the current policy year; and

    b.  the immediately preceding policy year.

**Grace Period**

This is the 31 days following a premium due date, other than the first, during which premium payment may be made.  During the grace period this policy shall continue in force, unless the Sponsor has given Liberty written notice 31 days in advance of discontinuance of this policy.

**Waiver of Premium**

Premium payments for a Covered Person are waived during any period for which benefits are payable. If coverage is to be continued, premium payments may be resumed following a period during which they were waived.

Form DOP3-PRE-0002

Premiums



**LIBERTY MUTUAL GROUP
LIBERTY LIFE ASSURANCE
COMPANY OF BOSTON**

Liberty Life Assurance
Company of Boston
Disability Claims
P.O. Box 1525
Dover, NH 03821-1525

Phone No.: 1-800-210-0268
Ext. 38535
Fax. No.: (603) 743-6422

## DISABILITY PAYMENT OPTIONS

**INSTRUCTIONS:** The policy/contract under which you are covered provides that Long Term Disability benefits will be reduced by the amount of Social Security disability benefits which you are eligible to receive. The policy/contract also provides that in the event you do not apply for Social Security disability benefits, the disability benefits will be reduced by the amount of Social Security disability benefits you would be eligible to receive if application had been made. If the Social Security Administration has not yet made a decision concerning your benefits, please tell us which option you want to use by checking box #1 or #2 below. Please return the signed form to our office, retaining the yellow copy for your records. If you make no selection, we will use option #1. If you have any questions, please contact us.

### TO BE COMPLETED BY LIBERTY MUTUAL

INSURER/PLAN SPONSOR: _____

POLICY NO.: _____          (Herein referred to as "we" and "us")

BENEFITS                                                DATE OF DISABILITY: _____

ISSUED TO: _____

                                                        ADDRESS: _____

CLAIMANT: _____

                                                        ADDRESS: _____

Until the Social Security Administration makes a decision, please handle my Long Term Disability benefits as indicated below.

1 ☐   In the absence of an election by me, Liberty Life Assurance Co. of Boston will estimate the amount of Social Security disability benefits I and my spouse and family will receive and reduce my monthly policy/contract benefit by this amount. If Social Security benefits are estimated, the monthly policy/contract benefit will be adjusted when Liberty Life Assurance Co. of Boston receives proof of the actual amount of benefits awarded by Social Security or that Social Security benefits have been denied. If my application for Social Security disability benefits is denied, the amount Liberty Life Assurance Co. of Boston estimating as my Social Security benefit will be returned to me in a lump sum.

2 ☒   I elect that Liberty Life Assurance Co. of Boston pay me a monthly benefit with no reduction for estimated Social Security benefits until Social Security makes a decision. This may result in an overpayment to me if Social Security subsequently awards benefits to me. I must supply Liberty Life Assurance Co. of Boston with a copy of the Social Security decision and repay any overpayment. If I do not repay this overpayment to Liberty Life Assurance Co. of Boston, Liberty Life Assurance Co. of Boston may withhold future Long Term Disability payments until they have recovered the overpayment, and/or pursue other means permitted by law to collect the amount owed. In addition, if Social Security makes an award, Liberty Life Assurance Co. of Boston will reduce my monthly policy/contract benefit by the amount of Social Security benefits I and my spouse and family receive according to the policy/contract provisions. If I want to elect this option but have not yet applied for Social Security benefits, I understand that I must apply for them immediately. If I do not apply for Social Security benefits or I have failed to actively pursue my Social Security claim, Liberty Life Assurance Co. of Boston will immediately begin to use Option #1.

_____
(Insured/Employee Signature)

_____
(Witness Signature)

8 Old Faith Rd Shrews, MA
(Address)

8 Old Faith Rd Shrews, MA
(Address)

8/11/99
(Date)

8/11/99
(Date)

DP 428 Rev. 9/97

WHITE - LIBERTY MUTUAL          YELLOW - CLAIMANT

**EXHIBIT**

B



**Liberty Mutual**™

## LIBERTY MUTUAL GROUP
## LIBERTY LIFE ASSURANCE
## COMPANY OF BOSTON

Liberty Life Assurance Company of Boston
Integrated Disability Management
Post Office Box 6205
Indianapolis, IN 46206-6205
Telephone: (888) 634-4001
Fax: (317) 566-8780

### DISABILITY PAYMENT OPTIONS

**INSTRUCTIONS:** The policy/contract under which you are covered provides that Long Term Disability benefits will be reduced by the amount of Social Security disability benefits which you are eligible to receive. The policy/contract also provides that in the event you do not apply for Social Security disability benefits, the disability benefits will be reduced by the amount of Social Security disability benefits you would be eligible to receive if application had been made. If the Social Security Administration has not yet made a decision concerning your benefits, please tell us which option you want to use by checking box #1 or #2 below. Please return the signed form to our office, retaining the yellow copy for your records. If you make no selection, we will use option #1. If you have any questions, please contact us.

---

### TO BE COMPLETED BY LIBERTY MUTUAL

INSURER/PLAN SPONSOR: _____

POLICY NO.: _____        (Herein referred to as "we" and "us")

BENEFITS                                    DATE OF DISABILITY: _____

ISSUED TO: _____

                                           ADDRESS: _____

CLAIMANT: _____        _____

                                           ADDRESS: _____

---

Until the Social Security Administration makes a decision, please handle my Long Term Disability benefits as indicated below.

1 ☐    In the absence of an election by me, Liberty Life Assurance Co. of Boston will estimate the amount of Social Security disability benefits I and my spouse and family will receive and reduce my monthly policy/contract benefit by this amount. If Social Security benefits are estimated, the monthly policy/contract benefit will be adjusted when Liberty Life Assurance Co. of Boston receives proof of the actual amount of benefits awarded by Social Security or that Social Security benefits have been denied. If my application for Social Security disability benefits is denied, the amount Liberty Life Assurance Co. of Boston estimating as my Social Security disability benefit will be returned to me in a lump sum.

2 ☒    I elect that Liberty Life Assurance Co. of Boston pay me a monthly benefit with no reduction for estimated Social Security benefits until Social Security makes a decision. This may result in an overpayment to me if Social Security subsequently awards benefits to me. I must supply Liberty Life Assurance Co. of Boston with a copy of the Social Security decision and repay any overpayment. If I do not repay this overpayment to Liberty Life Assurance Co. of Boston, Liberty Life Assurance Co. of Boston may withhold future Long Term Disability payments until they have recovered the overpayment, and/or pursue other means permitted by law to collect the amount owed. In addition, if Social Security makes an award, Liberty Life Assurance Co. of Boston will reduce my monthly policy/contract benefit by the amount of Social Security benefits I and my spouse and family receive according to the policy/contract provisions. If I want to elect this option but have not yet applied for Social Security benefits, I understand that I must apply for them immediately and appeal any denial of Social Security benefits. If I do not apply for Social Security benefits or appeal any denial of Social Security benefits, or I have failed to actively pursue my Social Security claim or appeal, Liberty Life Assurance Co. of Boston will immediately begin to use Option #1.

_____
(Insured/Employee Signature)

_____
(Witness Signature)

8 Old Faith Rd Shrews, MA
01545
_____
(Address)

_____
(Address)

6/18/01
_____
(Date)

_____
(Date)

LDIDM 1 Rev. 10/99

WHITE - LIBERTY MUTUAL        YELLOW - CLAIMANT

## Authorization to Obtain and Release Information



Liberty Life Assurance
Company of Boston
Disability Claims
P.O. Box 1525
Dover, NH 03821-1525
Phone: 1-800-210-0268
Fax: 603-743-6422

**Return to:** Eli Oake-Libow



EMPLOYEE/CLAIMANT NAME: <u>John Rubaszko</u>

CLAIM NO.: <u>502060</u>

EMPLOYER/SPONSOR: <u>FleetBoston</u>

S.S. NO.: ▬ ▬ 0056

DATE OF BIRTH: ▬/56

I **authorize** any licensed physician, medical provider, hospital, medical facility, pharmacy, government agency, including the Social Security Administration and Veterans Administration, insurance or reinsurance company, credit or consumer reporting agency, financial/educational institutions and any current or former employer to release any and all of the following information to the particular Company in the Liberty Mutual Group of companies to which I am submitting a claim, or to its legal representative, or to the Plan Sponsor (if Self Insured Plan), or to persons or other organizations providing claims management services:

1. Medical information with respect to any physical or mental condition and/or treatment of me, including confidential information regarding AIDS/HIV infection, communicable diseases, alcohol and substance abuse, and mental health.

2. Information with respect to: job duties, earnings, employment applications, personnel records, and other work related information; records and information related to any insurance coverage and claims filed, ~~credit information including, but not limited to, credit reports and credit applications, other financial information including bank records~~; complete copies of Federal and State tax returns; including attachments; and academic transcripts.

3. Information concerning Social Security benefits, including, but not limited to, monthly benefit amounts, monthly Supplemental Security Income payment amounts, entitlement dates, information from my Fact Query, and any benefits to which my dependents may be eligible under my record.

I **understand** the Company or Plan Sponsor will use the information obtained under this Authorization or directly from me to determine eligibility for insurance benefits, which may include assessing ongoing treatment. Any information obtained will not be released to any person or organizations EXCEPT to the Plan Sponsor, reinsuring companies, other companies in the Liberty Mutual Group of companies to which I am submitting a claim, persons or other organizations providing claims management and claim advisory services to the Plan Sponsor and/or to the Company, the Group Policyholder for purposes of auditing Liberty's administration of claims under the policy and persons or organizations providing medical treatment or services in connection with my claim. I also understand that, to the extent reasonably necessary, information obtained may be released to other insurance companies or insurance support organizations to detect or prevent criminal activity, fraud, material misrepresentation, or material non-disclosure in connection with insurance transactions.

I **know** that I may request a copy of this Authorization. I agree that a photographic copy of this Authorization shall be as valid as the original. This authorization shall become effective on the date appearing next to my signature below.

If I receive a disability benefit greater than that which I should have been paid, I understand that the Company has the right to recover such overpayment from me, including the right to reduce future disability benefits, or other collection methods as appropriate.

I **understand** that any person who knowingly, and with intent to injure, defraud, or deceive the Company and/or Plan Sponsor, files a statement or claim containing any false, incomplete, or misleading information may be guilty of a criminal act punishable under law.

I understand that this Authorization shall be valid for two years from the date appearing below with my signature and that I have the right to revoke this authorization at any time by notifying the Plan Sponsor and/or the Company in the Liberty Mutual group of companies to which I submit a claim.

**\* See below re: #2**

John M. Rubaszko
_____
Print Name

_[signature]_
_____
Signature

0056
_____
Social Security Number

1/8/02
_____
Date

EXHIBIT
C

H.O. ADMIN SUPPORT
JAN 1 1 2002
DISABILITY-J.B.

DP.432 07/01

**\* Per policy # GF3-811-252443-01, there is no provision under the policy that specifically states that Liberty Mutual has the rights to any credit information outlined in #2 line 2 from "credit information ...**

_[handwritten marginal notes along left edge:]_ # Note to Line crossed out on line 4 non bards. Is an invasion of privacy + not necessary to process her income tax return Show all opr Liberty usual + provider + tax payers.

Refer To: ████-0056

Office of Hearings and Appeals
1441 Main Street
Suite 450
Springfield, MA 01103

Date: OCT 22 2002

John M. Rubaszko
8 Old Faith Road
Shrewsbury, MA 01545

## NOTICE OF DECISION – FULLY FAVORABLE

I have made the enclosed decision in your case. Please read this notice and the decision carefully.

### This Decision is Fully Favorable To You

Another office will process the decision and send you a letter about your benefits. Your local Social Security office or another office may first ask you for more information. If you do not hear anything for 60 days, contact your local office.

### The Appeals Council May Review The Decision On Its Own

The Appeals Council may decide to review my decision even though you do not ask it to do so. To do that, the Council must mail you a notice about its review within 60 days from the date shown above. Review at the Council's own motion could make the decision less favorable or unfavorable to you.

### If You Disagree With The Decision

If you believe my decision is not fully favorable to you, or if you disagree with it for any reason, you may file an appeal with the Appeals Council.

### How To File An Appeal

To file an appeal you or your representative must request the Appeals Council to review the decision. You must make the request in writing. You may use our Request for Review form, HA-520, or write a letter.

You may file your request at any local Social Security office or a hearing office. You may also mail your request right to the Appeals Council, Office of Hearings and Appeals, 5107 Leesburg Pike, Falls Church, VA 22041-3255. Please put the Social Security number shown above on any appeal you file.

See Next Page



EXHIBIT

D

John M. Rubaszko (⬛⬛⬛ _056)

## Time To File An Appeal

To file an appeal, you must file your request for review **within 60 days** from the date you get this notice.

The Appeals Council assumes you got the notice 5 days after the date shown above unless you show you did not get it within the 5-day period. The Council will dismiss a late request unless you show you had a good reason for not filing it on time.

## Time To Submit New Evidence

You should submit any new evidence you wish to the Appeals Council to consider **with** your request for review.

## How An Appeal Works

Our regulations state the rules the Appeals Council applies to decide when and how to review a case. These rules appear in the Code of Federal Regulations, Title 20, Chapter III, Part 404, Subpart J.

If you file an appeal, the Council will consider all of my decision, even the parts with which you agree. The Council may review your case for any reason. It **will** review your case if one of the reasons for review listed in our regulations exists. Section 404.970 of the regulations lists these reasons.

Requesting review places the entire record of your case before the Council. Review can make any part of my decision more or less favorable or unfavorable to you.

On review, the Council may itself consider the issues and decide your case. The Council may also send it back to an Administrative Law Judge for a new decision.

## If No Appeal And No Appeals Council Review

If you do not appeal and the Council does not review my decision on its own motion, you will not have a right to court review. My decision will be a final decision that can be changed only under special rules.

See Next Page

John M. Rubaszko (█████56)

Page 3 of 3

## If You Have Any Questions

If you have any questions, you may call, write or visit any Social Security office. If you visit an office, please bring this notice and decision with you. The telephone number of the local office that serves your area is (508)753-4105. Its address is 51 Myrtle Street, 1st Floor, Madison Place, Worcester MA 01608.

Stephen C. Fulton
Administrative Law Judge

cc:   Christopher Doherty
      171 Tremont Street
      Melrose, MA 02176

Integrated Disability Management
Employee Claims Unit
P. O. Box 1507
Dover, NH 03821-1507
Telephone: (800) 210-7140
FAX 603-740-6348



**Liberty Mutual.**

Liberty Life Assurance Company of Boston

October 29, 2002

John Rubaszko
8 Old Faith Road
Shrewsbury, MA  01545

RE:    Long Term Disability Benefits
       FleetBoston Financial
       Claim #: 502060

Dear Mr. Rubaszko:

Christopher Doherty advised us that you are currently receiving Social Security benefits. . To assist us in the proper administration of your claim please:

1. Provide me with a copy of your Award Letter.
2. Notify me immediately when you receive your first Social Security benefit check, which may include a large retroactive payment.
3. Complete and return the enclosed Consent for Release of Information Form.

As stated in previous correspondence, FleetBoston Financial's long-term disability policy calls for us to reduce your long-term disability benefits by the amount of income you receive from other sources, including Social Security. Specifically, the plan states:

*Benefits from Other Income*

*Benefits from Other Income means those benefits shown below:…*

4. *The amount of Disability and/or Retirement Benefits under the United States Social Security Act…for which:*
   a. *the Covered Person receives or is eligible for; and*
   b. *his spouse, child or children receives or are eligible for because of his Disability; or*
   c. *his spouse, child, or children receives or are eligible for because of his eligibility for Retirement Benefits.*

As you know, during the time it took Social Security to decide their claim, Liberty has paid you full disability benefits for the period July 26, 1999 to present. In effect, we advanced you the money we expected Social Security would ultimately pay, and you signed an agreement to repay the advance upon receiving Social Security Disability benefits. Your award notice indicates both the monthly Social Security disability benefit you and your dependents will receive, and your retroactive benefit award. Accordingly,

**EXHIBIT**

E

1. We will begin reducing your monthly benefit from Liberty to offset for your monthly Social Security benefits.

2. You must repay our overpayment to us immediately. We strongly suggest you set aside your retroactive payment from Social Security to repay this obligation. A member of our Claims Receivables Services unit will contact you shortly, after calculating the exact amount due.

For your convenience, we have enclosed a postage paid envelope to assist you in returning the documents we have requested. As always, please call me if you have any questions.

Sincerely,

Jennifer Sagris
Claims Case Manager II
1-800-210-7140 Ext. 38584

Social Security Administration                    )    MD15   M7

# Retirement, Survivors, and Disability Insurance

Notice of Award

Office of Central
Operations
1500 Woodlawn Drive
Baltimore, Maryland 21241-1500
Date: March 3, 2003
Claim Number: ███-██-0056 HA

JOHN RUBASZKO
8 OLD FAITH RD
SHREWSBURY, MA   01545


We are writing to let you know that you are entitled to monthly
disability benefits from Social Security beginning July 1999.

**What We Will Pay**

* Your first check is for $64,712.00.

* This is the money you are due through December 2002.

* After that, you will receive $1,560.00 on or about the
third of each month.

**The Date You Became Disabled**

We found that you became disabled according to our rules on
January 27, 1999. However, you have to be disabled for 5 full
calendar months in a row before you can be entitled to
benefits. For this reason, your first month of entitlement is
July 1999.

**Information About Medicare**

You are entitled to hospital insurance under Medicare beginning
July 2001.

You are entitled to medical insurance under Medicare beginning
January 2003.

We charge a monthly premium for your medical insurance.  The
rates are shown below:

| Amount | Beginning Date |
|--------|----------------|
| $   50.00 | July 2001 |
| $   54.00 | December 2001 |
| $   58.70 | December 2002 |

SEE NEXT PAGE



EXHIBIT

F

We will send you a Medicare card. You should take this card with you when you need medical care. If you need medical care before receiving the card and your coverage has already begun, use this letter as proof that you are covered by Medicare.

If you do not want medical insurance, please complete the enclosed card and return it to us in the envelope we have provided. You will need to do this by the date shown on the card. If you decide you do not want the insurance, we will return any premiums that you have paid.

We did not give you earlier medical insurance because we did not process it timely. If you want to have these benefits earlier, you can choose medical insurance benefits beginning July 2001. If you want this benefit to start earlier, you must do the following things within 30 days after the date of this notice:

- tell us in writing that you want medical insurance benefits beginning July 2001;

- pay us $956.70. This covers the premiums due from July 2001 through July 2001; or

- tell us we can withhold this amount from the check.

If you want the benefits beginning July 2001 but would find it hard to pay the premium amount in a lump sum, ask us about other ways to pay the money.

## Information About Lawyer's or Representative's Fees

We have approved the fee agreement between you and your lawyer. Your past-due benefits are $64,770.00 for July 1999 through December 2002. Under the fee agreement, the lawyer cannot charge you more than $5,300.00 for his or her work. The amount of the fee does not include any out-of-pocket expenses (for example, costs to get copies of doctors' or hospitals' reports). This is a matter between you and the lawyer.

You, the lawyer or the person who decided your case can ask us to review the amount of the fee we say the lawyer can charge.

If you think the amount of the fee is too high, write us within 15 days from the day you get this letter. Tell us that you disagree with the amount of the fee and give your reasons. Send your request to this address:

Social Security Administration
Office of Hearings and Appeals
Attorney Fee Branch
5107 Leesburg Pike
Falls Church, Virginia 22041-3255

SEE NEXT PAGE

The lawyer also has 15 days to write us if he or she thinks the amount of the fee is too low.

If we do not hear from you or the lawyer, we will assume you both agree with the amount of the fee shown.

Because of the law, we usually withhold 25 percent of the total past-due benefits or the maximum payable under the fee agreement to pay an approved lawyer's fee. We withheld $5,300.00 from the past due benefits to pay the lawyer.

## Other Social Security Benefits

The benefits described in this letter are the only ones you can receive from Social Security. If you think that you might qualify for another kind of Social Security benefit in the future, you will have to file another application.

## Do You Think We Are Wrong?

If you disagree with this decision, you have the right to appeal. We will review your case and consider any new facts you have. A person who did not make the first decision will decide your case. We will correct any mistakes. We will review those parts of the decision which you believe are wrong and will look at any new facts you have. We may also review those parts which you believe are correct and may make them unfavorable or less favorable to you.

- You have 60 days to ask for an appeal.

- The 60 days start the day after you get this letter. We assume you got this letter 5 days after the date on it unless you show us that you did not get it within the 5-day period.

- You must have a good reason for waiting more than 60 days to ask for an appeal.

- You have to ask for an appeal in writing. We will ask you to sign a form SSA-561-U2, called "Request for Reconsideration". Contact one of our offices if you want help.

## If You Have Any Questions

We invite you to visit our website at www.socialsecurity.gov on the Internet to find general information about Social Security. If you have any specific questions, you may call us toll-free at 1-800-772-1213, or call your local Social Security office at 1-508-753-4397. We can answer most questions over the phone. If you are deaf or hard of hearing, you may call our TTY number, 1-800-325-0778.

SEE NEXT PAGE

You can also write or visit any Social Security office. The office that serves your area is located at:

> SOCIAL SECURITY
> MADISON PL
> 51 MYRTLE ST
> WORCESTER,MA 01608

If you do call or visit an office, please have this letter with you. It will help us answer your questions. Also, if you plan to visit an office, you may call ahead to make an appointment. This will help us serve you more quickly when you arrive at the office.

*Jo Anne B. Barnhart*

Jo Anne B. Barnhart
Commissioner
of Social Security

Enclosure(s):
    Form CMS.2690
    Envelope

RECEIVED (KB)

MAR 1 7 2003

GROUP DISABILITY PRODUCTS



Liberty
Mutual™

Liberty Life Assurance Company of
Boston
Disability Claims
P.O. Box 1525
Dover, NH 03821-1525
Phone No.: (800) 210-0268
Fax No.: (603) 743-6422

January 26, 2004

John Rubaszko
8 Old Faith Road
Shrewsbury, MA 01545-0000

RE:    Overpayment Calculation and Repayment
       Disability Benefits
       Fleetboston Financial Corp
       Claim Number: 502060

Dear Mr. Rubaszko:

Your Liberty case manager referred your disability claim file to me because you were awarded Social Security Disability Benefits. This letter outlines the impact of that award on your benefits from Liberty.

As you know, your employer's disability plan calls for us to reduce your long-term disability benefits by the amount of income you receive from other sources, including Social Security. Since Liberty paid you full disability benefits for the period July 26, 1999 to the present, we in effect advanced you the money we expected Social Security would ultimately pay. You also signed an agreement to repay this advance upon receiving Social Security Disability benefits. Now that you have begun receiving Social Security Disability benefits, including retroactive payment for that period, it is time to repay Liberty.

Your notice states that you will receive monthly Social Security Disability benefits of $1,461.00, retroactive to July 1, 1999. In January of 2000 you received a credit for additional earnings that increased your benefit from $1,461.00 to $1,467.00. Your notice also states that you will receive Social Security Disability benefits for your dependent of $778.00, retroactive to November 1, 2001. Therefore as outlined on the attached exhibit:

1. You must repay our overpayment to you immediately. The attached exhibit explains the calculation of your $73,767.78 balance, which is due Liberty immediately. Your file will be referred to an outside collection agency for further collection assistance.

Please call me if you have any questions.

Sincerely,



EXHIBIT
G

John Rubaszko
January 26, 2004
Page 2 of 2

Josh Hersey
Financial Specialist
Phone No.: (800) 210-0268 Ext. 30137
Fax No.: (603) 743-6422

## Overpayment Calculation

Originally Paid
July 26, 1999 through October 22, 2003                $ 110,568.95

Should have paid
July 26, 1999 through October 22, 2003                $  (32,646.95)

Total Overpayment Due                                 $    77,922.00

Less Recovery of Prior Overpayment                    $   (4,154.22)

Total Balance Due:                                        $73,767.78

## CLAIMANT INFORMATION

| | |
|---|---|
| Claimant | John Rakowski |
| Customer | Fleet Boston Corporation |
| SSN | |
| Claim #(s) | 920062 |

| | |
|---|---|
| Gross Model Benefit | 2,562.48 |
| ER Percentage | 0.00 |
| Minimum Monthly Benefit | 0.00 |
| Federal Tax Withholding | 0 |

### OFFSET INFORMATION

| | From Date | Thru Date | Benefit |
|---|---|---|---|
| SS Primary | 8/1/1999 | 12/31/1999 | 1,461.00 |
| SS Primary | 11/1/2000 | 10/22/2003 | 1,467.00 |
| SS Dependent | 11/1/2001 | 10/22/2003 | 778.00 |
| SS Dependent | | | |
| Workers' Comp | | | |
| Partial Disability | | | |
| State Disability | | | |
| Other | 8/1/1999 | 8/31/1999 | |

| | From Date | Thru Date | Benefit |
|---|---|---|---|

_The main body of this page is a large financial spreadsheet of benefit payments organized in two halves (ORIGINALLY PAID and SHOULD HAVE BEEN PAID), with columns including CHECK #, FROM DATE, THRU DATE, ISSUE DATE, GROSS, OFFSET, ADJ GROSS, FIT, FICA, DED held towards OP rec., NET AMT, SS GROSS, SS PRIMARY OFFSET, SS DEPENDENT OFFSET, PENSION OFFSET, STD OFFSET, PARTIAL DIS, ADJ GROSS, FIT, FICA, DED held towards OP rec., NET AMT, OP, OP AMT PREV RECOVERED, and OP TO BE RECOVERED/CREDITED._

| CHECK # | FROM DATE | THRU DATE | ISSUE DATE | GROSS | OFFSET | ADJ GROSS | | | | NET AMT | | OP | OP AMT PREV RECOVERED |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 25483011 | 8/1/1999 | 8/31/1999 | 8/23/1999 | 2,562.48 | 512.49 | 2,049.99 | | | | 2,049.99 | | 1,461.00 | 1,461.00 |
| 25505101 | 9/1/1999 | 9/30/1999 | 9/30/1999 | 2,562.48 | 0.00 | 2,562.48 | | | | 2,562.48 | | 1,461.00 | 1,461.00 |
| 25515536 | 10/1/1999 | 10/25/1999 | 10/25/1999 | 2,562.48 | 0.00 | 2,562.48 | | | | 2,562.48 | | 1,461.00 | |
| 25531307 | 11/1/1999 | 11/23/1999 | 11/23/1999 | 2,562.48 | 0.00 | 2,562.48 | | | | 2,562.48 | | 1,461.00 | 1,222.27 |
| 25548148 | 12/1/1999 | 12/31/1999 | 12/31/1999 | 2,562.48 | 0.00 | 2,562.48 | | | | 2,562.48 | | | |

_(The table continues for many rows covering monthly benefit periods from 1999 through 2003.)_

### TOTALS

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| TOTALS | | | | 130,173.99 | 15,459.82 | 114,723.17 | | | 4,154.22 | 110,568.95 | 130,173.99 |

℈JS 44  (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

**Liberty Life Assurance Company of Boston**

**(b)** County of Residence of First Listed Plaintiff  **Suffolk**
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
**Guy P. Tully, Jackson Lewis LLP**
**75 Park Plaza, Boston, MA  02116**

## DEFENDANTS

**John Rubaszko**

County of Residence of First Listed Defendant   **Worcester**
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1  U.S. Government Plaintiff
- ☒ 3  Federal Question (U.S. Government Not a Party)
- ☐ 2  U.S. Government Defendant
- ☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☒ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | Habeas Corpus: | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1  Original Proceeding
- ☐ 2  Removed from State Court
- ☐ 3  Remanded from Appellate Court
- ☐ 4  Reinstated or Reopened
- ☐ 5  Transferred from another district (specify)
- ☐ 6  Multidistrict Litigation
- ☐ 7  Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
**Employee Retirement Income Security Act of 1974, 29 U.S.C. §1001 et. seq; §1132 (a)(3)**
Brief description of cause:
**Claim for unjust enrichment and constructive trust under ERISA and federal**

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ **73,767.78  plus cost, attorneys' fees and interest**

CHECK YES only if demanded in complaint: **common la**
JURY DEMAND:  ☐ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):   JUDGE _____   DOCKET NUMBER _____

DATE  *3/16/05*         SIGNATURE OF ATTORNEY OF RECORD

---

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. Title of case (name of first party on each side only) **Liberty Life Assurance Company of Boston v. John Rubaszko**

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet. (See local rule 40.1(a)(1)).

- [ ] I.   160, 410, 470, 535, R.23, REGARDLESS OF NATURE OF SUIT.

- [X] II.  195, 196, 368, 400, 440, 441-446, 540, 550, 555, 625, 710, 720, 730,   *Also complete AO 120 or AO 121
         740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.            for patent, trademark or copyright cases

- [ ] III. 110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
         315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
         380, 385, 450, 891.

- [ ] IV.  220, 422, 423, 430, 460, 480, 490, 510, 530, 610, 620, 630, 640, 650, 660,
         690, 810, 861-865, 870, 871, 875, 900.

- [ ] V.   150, 152, 153.

3. Title and number, if any, of related cases. (See local rule 40.1(g)). If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.
   **N/A**

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?
   YES [ ]    NO [X]

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest? (See 28 USC §2403)
   YES [ ]    NO [X]

   If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?
   YES [ ]    NO [ ]

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?
   YES [ ]    NO [X]

7. Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).
   YES [ ]    NO [X]

   A.  If yes, in which division do all of the non-governmental parties reside?
       Eastern Division [ ]        Central Division [ ]        Western Division [ ]

   B.  If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?
                    **Plaintiff**                **Defendant**
       Eastern Division [X]        Central Division [X]        Western Division [ ]

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)
   YES [ ]    NO [ ]

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME ___ **Guy P. Tully, Jackson Lewis LLP**
ADDRESS _____ **75 Park Plaza, Boston, MA  02116**
TELEPHONE NO. _____ **617-367-0025**

(CategoryForm.wpd - 5/2/05)