UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LIBERTY LIFE ASSURANCE<br>COMPANY OF BOSTON,<br>　　　　Plaintiff<br><br>v.<br><br>JOHN RUBASZKO,<br>　　　　Defendant | )<br>)<br>)<br>)<br>)<br>)  Civ. No.: 05-40142 FDS<br>)<br>)<br>)<br>) |

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S OBJECTIONS TO AND REQUEST TO VACATE MEMORANDUM AND ORDER GRANTING DEFENDANT'S MOTION TO COMPEL DISCOVERY

Plaintiff Liberty Life Assurance Company of Boston ("Liberty Life") objects to the August 22, 2006 Memorandum and Order Granting Defendant's Motion to Compel Discovery. Liberty Life also requests that the Court enter an Order vacating the Memorandum and Order and denying the Motion to Compel Discovery filed by Defendant John Rubaszko ("Defendant") because the Memorandum and Order is clearly erroneous and contrary to law in that the discovery sought by Defendant is not reasonably calculated to lead to the discovery of admissible evidence in the above-styled action. This memorandum is submitted in support of Liberty Life's Objections to and Request to Vacate the August 22, 2006 Memorandum and Order of Magistrate Judge Timothy Hillman.

### Procedural Background.

Defendant filed his Motion to Compel Discovery on June 19, 2006, to which Liberty Life timely responded on June 29, 2006. On July 31, 2006, this Court referred the Motion to Magistrate Judge Timothy S. Hillman, who issued a Memorandum and Order granting Rubaszko's Motion on August 22, 2006. Liberty Life timely objects to the Memorandum and

Order and asks the Court to modify it and enter an Order denying Rubaszko's Motion to Compel Discovery.

### Defendant's Written Discovery Requests at Issue Are Not Reasonably Calculated to Lead to the Discovery of Evidence Relevant to this Litigation.

All of the discovery requests propounded by Defendant that are at issue by Defendant's Motion to Compel Discovery seek information concerning Liberty Life's underwriting, actuarial determinations, and claims experience relating to the provision in the relevant plan documents limiting the benefit period for which a claimant who suffers from a mental disability to 24 months. In the Motion to Compel, Defendant argues that the discovery is appropriate because this provision violates the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq. Defendant has not brought a counterclaim in this litigation under the ADA against Liberty Life, and his sole counterclaim against Liberty Life is brought under ERISA, specifically 29 U.S.C. § 1132. However, as noted in the Memorandum and Order, Defendant has raised this issue as an affirmative defense to Liberty Life's claims. Even though the matter has been raised in the pleadings, if there is no legal validity to the issue, then the discovery sought by Defendant cannot lead to the discovery of evidence relevant to this litigation. As explained below and recognized by all but a very few of the Courts that have taken up the matter, the ADA does not prohibit a disability benefits plan from imposing special coverage limitations on disabilities of a mental nature. Therefore, Defendant's requested discovery concerning Liberty Life's underwriting, actuarial determinations, and claims experience in this regard cannot lead to the discovery of relevant evidence. Thus, the Magistrate Judge's Memorandum and Order must be modified, and Defendant's Motion to Compel Discovery must be denied.

As one District Judge from Massachusetts noted, "A plethora of rulings on the subject all reach the same conclusion—the ADA does not require equal benefits for different disabilities."[1] E.E.O.C. v. Staten Island Savings Bank, 207 F.3d 144,151-53 (2d Cir. 2000) (ADA does not require parity between mental and physical disabilities); Weyer v. Twentieth Century Fox Film Corp., 198 F.3d 1104, 1116-18 (9th Cir. 2000) (permissible to classify mental-illness risks differently than physical disabilities); Kimber v. Thiokol Corp., 196 F.3d 1092,1101-02 (10th Cir. 1999) ("ADA does not prohibit an employer from operating a long-term disability benefits plan which distinguishes between ... disabilities."); Lewis v. K-Mart Corp., 180 F.3d 166, 170 (4th Cir. 1999) (disability plan need not provide same benefits for all disabilities); Ford v. Schering-Plough Corp., 145 F.3d 601, 608 (3rd Cir. 1998); Parker v. Metropolitan Life Ins. Co., 121 F.3d 1006,1018 (6th Cir. 1997) (en banc); E.E.O.C. v. CNA Ins. Cos., 96 F.3d 1039, 1043-45 (7th Cir. 1996) (upheld plan that limited mental-disability benefits to two years); Krauel v. Iowa Methodist Med. Ctr., 95 F.3d 674, 678 (8th Cir. 1996); Modderno v. King, 82 F.3d 1059, 1060-62 (D.C. Cir. 1996).

Additionally, several District Courts within the 1st Circuit have held that these plans do not violate the ADA. El-Hajj v. Fortis Benefits Ins. Co., 156 F. Supp. 2d 27, 30-32 (D. Me. 2001); Wilson v. Globe Specialty Products, Inc., 117 F.Supp.2d 92, 94 (D. Mass. 2000); Witham v. Brigham & Women's Hosp., Inc., Civil No.00-268-M, 2001 U.S. Dist. LEXIS 7027, at *12 (D.N.H. May 31, 2001) (unpublished opinion attached as Exhibit A hereto); Pelletier v. Fleet Fin. Group, Inc., No. CIV. 99-245-B, Civil No. 99-CV-146-PH, 2000 WL 1513711, at *3 (D.N.H. Sept. 19, 2000) (unpublished opinion attached as Exhibit B hereto).

Only the 1st, 5th, and 11th Circuits have not ruled on this issue, but every Circuit that has analyzed the matter has ruled that the ADA does not prohibit differentiation in the

---

[1] Wilson v. Globe Specialty Products, Inc., 117 F.Supp.2d 92, 95-96 (D. Mass. 2000).

treatment of mental and physical disabilities within a disability benefits plan. However, in the Memorandum and Order in this case, the Magistrate Judge found compelling one of the very few cases that have held that a distinction between the treatment of physical and mental disabilities in an ERISA benefit plan may be actionable under the ADA, specifically Judge William G. Young's opinion in Iwata v. Intel Corp., 349 F.Supp.2d (D. Mass. 2000) (held that provision at issue may violate the ADA and therefore, not be enforceable in an ERISA benefit plan)[2].

Judge Young recognized that his opinion in Iwata contradicted the opinions of the vast majority of the Courts that have analyzed this issue. Therefore, this Court must decide which cases have correctly decided this issue. Judge George Z. Singal set forth an excellent analysis of the reasons for the previous decisions in his opinion in the El-Hajj case:

> The majority of courts based their holdings on numerous sound principles, such as (1) the plain language of the ADA does not suggest that it requires equal treatment of the mentally and the physically disabled; (2) the ADA's legislative history suggests that Congress did not intend for the Act to establish parity between the treatment of mental and physical disabilities; (3) congressional action subsequent to the passage of the ADA implies that Congress believes that the ADA does not require equal treatment of mental and physical disabilities; (4) EEOC guidance documents recognize that most insurance plans provide lesser coverage for psychological disabilities; and (5) requiring insurers to provide equal coverage for different types of disabilities "would destabilize the insurance industry in a manner definitely not intended by Congress when passing the ADA.."
>
> In addition, the Supreme Court has held that the Rehabilitation Act, 29 U.S.C. § 794 et seq., which is the precursor to the ADA, does not require equal treatment of those with psychological disabilities versus those with physical disabilities. See Traynor v. Turnage, 485 U.S. 535, 549 (1988); Alexander v. Choate, 469 U.S. 287, 302 (1985). Courts often rely on case law interpreting the Rehabilitation Act when analyzing the ADA, and therefore several courts have relied on the Traynor and Alexander rulings to foreclose arguments similar to Plaintiff's.
>
> El-Hajj v. Fortis Benefits Ins. Co., 156 F. Supp. 2d at 31 (citations omitted).

---

[2] See also, Judge Reginald C. Lindsay's opinion in Fletcher v. Tufts University, 367 F.Supp.2d 99 (D. Mass. 2000) (held that provision at issue may not comply with the ADA).

Accordingly, it is clear that the Circuit Courts have analyzed the matter correctly. There is no requirement under either ERISA or the ADA that a disability benefit plan treat physical and mental disabilities the same. Absent such a requirement, Defendant's discovery requests cannot possibly lead to the discovery of admissible evidence in this action, and the Magistrate Judge's Memorandum and Order should be modified and an Order denying Defendant's Motion to Compel should be entered.[3]

Respectfully submitted,

LIBERTY LIFE ASSURANCE
COMPANY OF BOSTON
By its attorneys,

/s/ Guy P. Tully
Guy P. Tully, Esq., BBO# 555625
**JACKSON LEWIS LLP**
75 Park Plaza, 4th Floor
Boston, MA 02116
PH: (617) 367-0025
FX: (617) 367-2155

and

Iwana Rademaekers, Esq.
*Admitted Pro Hac Vice*
Texas Bar No. 16452560
**JACKSON LEWIS LLP**
3811 Turtle Creek Blvd., Suite 500
Dallas, TX 75219
PH: (214) 520-2400
FX: (214) 520-2008

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing pleading was electronically filed with the clerk for the U.S. District Court, District of Massachusetts, using the electronic case filing system of the court., and that a copy is being served upon Defendant's counsel through the ECF system.

/s/ Guy P. Tully

August 29, 2006          ONE OF COUNSEL

---

[3] In the alternative, Liberty Life requests that the Court enter a protective order in recognition of the sensitive and confidential nature of the documents and information requested by the discovery requests.

2 of 9 DOCUMENTS

**Raelene Witham, Plaintiff v. Brigham & Women's Hospital, Inc. and Liberty Mutual Insurance Co., Defendants**

Civil No. 00-268-M

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW HAMPSHIRE

*2001 DNH 102; 2001 U.S. Dist. LEXIS 7027; 12 Am. Disabilities Cas. (BNA) 1099*

**May 31, 2001, Decided**

**NOTICE:** NOT FOR PUBLICATION

**DISPOSITION:** [*1] Defendants' motion to dismiss granted.

**COUNSEL:** For RAELENE WITHAM, plaintiff: Benjamin T. King, Esq., Boynton Waldron Doleac Woodman & Scott, Portsmouth, NH.

For BRIGHAM AND WOMEN'S HOSPITAL, INC., LIBERTY MUTUAL INSURANCE COMPANY, defendants: William D. Pandolph, Esq., Sulloway & Hollis, Concord, NH.

**JUDGES:** Steven J. McAuliffe, United States District Judge.

**OPINIONBY:** Steven J. McAuliffe

**OPINION:**

### ORDER

Raelene Witham brings this suit against her former employer, Brigham & Women's Hospital ("BWH"), and the administrator of BWH's long-term disability insurance plan, Liberty Life Assurance Company of Boston ("Liberty"), seeking damages for alleged violations of the Americans with Disabilities Act ("ADA"). n1 Witham claims that because the plan provides substantially greater benefits to participants who are disabled by reason of a physical disability than to participants (like Witham) who are disabled by reason of a mental disability, it unlawfully discriminates against those with mental impairments or handicaps. Defendants move to dismiss Witham's complaint, saying the provisions of the plan with which she takes issue do not, as a matter of law, violate the ADA and, therefore, she has [*2] failed to assert a viable cause of action.

n1 Witham's complaint apparently misidentifies Liberty as "Liberty Mutual Insurance Company."

### Standard of Review

A motion to dismiss under *Fed. R. Civ. P. 12(b)(6)* is one of limited inquiry, focusing not on "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes, 416 U.S. 232, 236, 40 L. Ed. 2d 90, 94 S. Ct. 1683 (1974)*. In considering a motion to dismiss, "the material facts alleged in the complaint are to be construed in the light most favorable to the plaintiff and taken as admitted." *Chasan v. Village District of Eastman, 572 F. Supp. 578, 579 (D.N.H. 1983)*. See also *The Dartmouth Review v. Dartmouth College, 889 F.2d 13, 15 (1st Cir. 1989)*. "Dismissal is appropriate only if 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Roeder v. Alpha Industries, Inc., 814 F.2d 22, 25 (1st Cir. 1987)* [*3] (quoting *Conley v. Gibson, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957)*).

### Background

BWH is a non-profit hospital operating in Boston, Massachusetts. It offers a self-insured long-term disability plan to all employees who work in excess of an established minimum number of hours each week. Eligible employees may also, if they so choose, supplement the coverage provided by the plan with private insurance. Generally speaking, and subject to certain limitations, for those participants who are permanently disabled by reason of a physical injury or illness, the plan may provide benefits until the participant reaches age 70. Consistent with what appears to be a fairly common practice, however, the plan provides benefits for a maximum of 24

EXHIBIT A

Case 4:05-cv-40142-FDS    Document 19-2    Filed 08/29/2006    Page 2 of 4

Page 2
2001 DNH 102; 2001 U.S. Dist. LEXIS 7027, *;
12 Am. Disabilities Cas. (BNA) 1099

months to those participants who are disabled by reason of an emotional disease or disorder.

Witham began working at BWH in 1990 and elected to participate in the plan. In 1996, she was diagnosed with Anorexia Nervosa with secondary Bulimia. As a result of her illness, Witham became totally disabled. In the Spring of 1997, after apparently exhausting her short-term disability benefits, Witham applied for, and began receiving, [*4] long-term disability benefits. Liberty's predecessor, acting as the plan's administrator, notified Witham that her application for long-term disability benefits had been approved but, because her disability was due to a mental or emotional disease or disorder, she was eligible for not more than 24 months of benefits. Witham does not deny that her illness constitutes a "mental or emotional disease or disorder," as that phrase is used in the plan. In January of 1999, after Liberty assumed the role of plan administrator, it contacted Witham and reminded her of the 24 month cap on her long-term disability benefits. In March of 1999, that period expired and Witham's benefits stopped.

Persuaded that her benefits had been terminated unlawfully, Witham filed a claim with the EEOC, received a "right to sue letter," and filed this suit. In it, she alleges that because the plan provides disparate benefits to physically disabled participants, on the one hand, and mentally disabled participants, on the other, it violates various provisions of the ADA.

**Discussion**

I. Titles I and III of the ADA.

In count 1 of her complaint, Witham alleges that BWH violated Title I of the ADA by [*5] providing her "with long term disability insurance which afforded her inferior coverage as a mentally disabled individual, as compared with the coverage provided employees with physical disabilities." Complaint at para. 18. Title I of the ADA provides, in pertinent part:

> No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

*42 U.S.C. § 12112*(a).

As to Liberty, Witham alleges that its "decision to subject Ms. Witham as a mentally disabled individual to treatment inferior to that accorded other insureds under the Policy constitutes discrimination on the basis of disability in violation of Title III of the ADA." Complaint, at para. 20. Title III of the ADA, which addresses discrimination by "public accommodations" provides, in pertinent part:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, [*6] privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

*42 U.S.C. § 12182*(a). Interpreting the scope of Title III, the Court of Appeals for the First Circuit has held that public accommodations are not limited to actual physical structures and "the discriminatory denial of benefits under a health care plan might, in some circumstances, state a claim under Title III of the ADA." *Tompkins v. United Healthcare of N.E., Inc.*, 203 F.3d 90, 95 n.4 (1st Cir. 2000) (citing *Carparts Distribution Center, Inc. v. Automotive Wholesaler's Ass'n, Inc.*, 37 F.3d 12, 19-20 (1st Cir. 1994)).

II. The ADA and BWH's Long-Term Disability Plan.

For purposes of this order, the court will assume that: (1) Witham filed suit in a timely fashion (a point with which BWH takes issue, at least as to her Title I claim); (2) BWH is a "covered entity" under Title I of the ADA, (3) Witham is a "qualified individual with a disability" under Title I (another point disputed by BWH); and, (4) although it did not issue any insurance [*7] policies relative to the plan (which is self-funded by BWH), Liberty is potentially subject to liability under Title III of the ADA (a point Liberty challenges in its motion).

This court (Barbadoro, C.J.) recently considered and rejected a claim, like Witham's, that a long-term disability plan violates Titles I and III of the ADA if it provides different levels of coverage for physically and mentally disabled participants.

> The central question presented by [plaintiff's] ADA claims is whether a long-term disability insurance plan which is open to both disabled and non-disabled employees on the same terms nevertheless violates

Case 4:05-cv-40142-FDS    Document 19-2    Filed 08/29/2006    Page 3 of 4

Page 3

2001 DNH 102; 2001 U.S. Dist. LEXIS 7027, *;
12 Am. Disabilities Cas. (BNA) 1099

the ADA if it fails to provide equivalent coverage for mental and physical disabilities. I join seven circuit courts in concluding that the answer to this question is no.

*Pelletier v. Fleet Financial Group, Inc.*, 2000 U.S. Dist. LEXIS 16456, 2000 DNH 196, 7 (D.N.H. Sept. 19, 2000) (footnote omitted) (citing *EEOC v. Staten Island Sav. Bank*, 207 F.3d 144, 148 (2d Cir. 2000) (Title I); *Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1116 (9th Cir. 2000) (Titles I and III); *Kimber v. Thiokol Corp.*, 196 F.3d 1092, 1101-02 (10th Cir. 1999) [*8] (Title I); *Lewis v. Kmart Corp.*, 180 F.3d 166, 170-71 (4th Cir. 1999) (Title I), cert. denied, 528 U.S. 1136, 145 L. Ed. 2d 929, 120 S. Ct. 978 (2000); *Ford v. Schering-Plough Corp.*, 145 F.3d 601, 608-10 (3d Cir. 1998) (Title I), cert. denied, 525 U.S. 1093, 142 L. Ed. 2d 704, 119 S. Ct. 850 (1999); *Parker v. Metropolitan Life Ins. Co.*, 121 F.3d 1006, 1019 (6th Cir. 1997) (Title III), cert. denied, 522 U.S. 1084, 139 L. Ed. 2d 768, 118 S. Ct. 871 (1998); *EEOC v. CNA Ins. Companies*, 96 F.3d 1039, 1044-45 (7th Cir. 1996) (Title I)). But see *Boots v. Northwestern Mutual Life Ins. Co.*, 77 F. Supp. 2d 211 (D.N.H. 1999) (Muirhead, M.J.) (concluding that providing disparate long-term disability benefits to physically and mentally disabled insureds may violate the ADA).

In reaching the conclusion that the plan at issue did not violate the ADA, Chief Judge Barbadoro relied heavily upon the recent decision of the Second Circuit Court of Appeals in *EEOC v. Staten Island Savings Bank, supra.*

There, the court held that Staten Island Savings [*9] Bank's long-term disability plan did not violate Title I of the ADA even though it limited disability benefits for "mental or emotional conditions" to two years while providing extended benefits for other types of disabilities. See 207 F.3d at 152-53. The court reached this conclusion because it determined that: (1) the statutory language at issue in Title I does not clearly prevent an employer from adopting a disability plan that provides reduced benefits for disabilities arising from mental illness, see *id.* at 149-50; (2) the ADA's legislative history strongly suggests that Congress did not intend to restrict an employer's ability to impose special limitations on disability insurance coverage for disabilities that result from mental illness, see *id.* at 150; (3) the existence of the ADA's safe harbor provision, 42 U.S.C. § 12201, does not support the view that disability plans cannot contain special limitations on coverage for mental illness, see *id.* at 150-51; (4) while the Supreme Court's recent decision in *Olmstead v. L.C.*, 527 U.S. 581, 119 S. Ct. 2176, 2186 n. 10, 144 L. Ed. 2d 540 (1999), suggests that the [*10] ADA generally prohibits individualized discrimination based on a particular disability or category of disabilities as well as discrimination between the disabled and the non-disabled, the reasoning underlying Olmstead's holding does not invalidate the type of disability insurance policy that is at issue in this case, see 207 F.3d at 151; (5) the EEOC's informal Interim Guidance on Application of the ADA to Health Insurance (June 8, 1993), reprinted in Fair Employment Practices Manual 405:7115 (BNA 2000), is not entitled to interpretative deference in a case such as the one at issue here because it does not cover disability insurance plans and it is in conflict with the EEOC's published "Interpretive Guidance on Title I of the Americans With Disabilities Act," 29 C.F.R. part 1630, App. 1630.5, see *id.* at 151-52; and (6) Congress enacted the ADA with an awareness of the "historic and nearly universal practice inherent in the insurance industry of providing different benefits for different disabilities" and, accordingly, it is reasonable to presume that Congress would have spoken more clearly had it intended to prohibit such a well-established practice, see *id.* at 149.

[*11] *Pelletier*, 2000 DNH 196, 8-10, 2000 U.S. Dist. LEXIS 16456. Consequently, the Chief Judge concluded that, "the statutory language that governs my analysis, the legislative history that bears on the question, and the historical backdrop against which the ADA was enacted, all support the view that Congress did not intend to prevent employers from offering long-term disability plans with special coverage limitations for mental disabilities when it enacted the ADA." Id. at 11. In light of that conclusion, defendants' motions for summary judgment as to plaintiff's claims under both Title I and Title III of the ADA were of course granted.

This court agrees with the analysis of the Chief Judge, the Second Circuit Court of Appeals, and each of the other courts of appeals that has addressed this issue,

Case 4:05-cv-40142-FDS    Document 19-2    Filed 08/29/2006    Page 4 of 4

Page 4

2001 DNH 102; 2001 U.S. Dist. LEXIS 7027, *;
12 Am. Disabilities Cas. (BNA) 1099

all of which have uniformly concluded that the ADA is not violated when, as is the case here, an employer offers its employees equal access to a long-term disability insurance plan that provides different levels of benefits for physical and mental disabilities.

**Conclusion**

In light of the foregoing, plaintiff's complaint fails to state a viable cause of action under either Title I or Title III of the ADA. [*12] Accordingly, defendants' motion to dismiss (document no. 8) is granted. The Clerk of Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

Steven J. McAuliffe

United States District Judge

May 31, 2001

1 of 1 DOCUMENT

Paul A. Pelletier v. Fleet Financial Group, Inc. and Unum Life Insurance Company of America

NH Civil No. 99-245-B, ME Civil No. 99-CV-146-PH

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW HAMPSHIRE

*2000 DNH 196; 2000 U.S. Dist. LEXIS 16456; 12 Am. Disabilities Cas. (BNA) 1094; 25 Employee Benefits Cas. (BNA) 1401*

September 19, 2000, Decided

**DISPOSITION:** [*1] Fleet's motion to dismiss (doc. no. 17) and Unum's motion for summary judgment (doc. no. 16) granted.

**COUNSEL:** For PAUL A. PELLETIER, plaintiff (99-CV-245): Charles W. March, Esq., Sunenblick Reben Benjamin & March, Portland, ME.

For FLEET FINANCIAL GROUP, INC., defendant (99-CV-245): Andrew C. Pickett, Esq., Jackson, Lewis, Schnitzler & Krupman, Boston, MA.

For FLEET FINANCIAL GROUP, INC., defendant (99-CV-245): Richard L. O'Meara, Murray, Plumb & Murray, Portland, ME.

For UNUM LIFE INSURANCE COMPANY OF AMERICA, defendant (99-CV-245): Patricia A. Peard, Esq., Bernstein, Shur, Sawyer & Nelson, Portland, ME.

**JUDGES:** Paul Barbadoro, Chief Judge.

**OPINIONBY:** Paul Barbadoro

**OPINION:**

### MEMORANDUM AND ORDER

Paul Pelletier became disabled and began collecting benefits under a long-term disability plan offered by his employer, Fleet Financial Group, Inc. Fleet funded the plan with an insurance policy issued by the Unum Life Insurance Company of America. Unum ultimately terminated Pelletier's benefits after 24 months pursuant to a policy provision limiting the payment of benefits for disability caused by "mental illness" to that period.

After Pelletier lost his disability benefits, [*2] he sued both Fleet and Unum alleging that: (1) the long-term disability plan's mental illness limitation violates Titles I and III of the Americans with Disabilities Act ("ADA"), *42 U.S.C. § 12101*, et seq.; (2) the limitation discriminates against him in violation of *Me. Rev. Stat. Ann., tit. 24-A, § 2159-A*; and (3) Unum's application of the limitation to his claim violates his rights under the Employee Retirement Income Security Act ("ERISA"), *29 U.S.C. § 1001*, et seq. Unum has moved for summary judgment (doc. no. 16) and Fleet has filed a motion to dismiss for failure to state a claim (doc. no. 17). For the following reasons, I grant both motions.

### I. BACKGROUND n1

------

n1 Unum and Pelletier have jointly submitted and stipulated to the authenticity and admissibility of the claim file and policy file maintained by Unum in connection with Pelletier's claim for benefits (the "Stipulated File Documents"). I hereinafter cite to the Stipulated File Documents as "R."

------

[*3]

The insurance policy funding Fleet's long-term disability plan provides that benefits "will be paid for the period of disability if the insured gives to [Unum] proof of continued" disability and regular attendance of a physician. R. at 366. The payment of benefits ceases on the earliest of: (1) "the date the insured is no longer disabled;" (2) "the date the insured dies;" (3) "the end of the maximum benefit period;" or (4) "the date the insured's current earnings exceed 80% of his indexed pre-disability earnings." Id. at 363. The policy also includes a "mental ill-

EXHIBIT B

Case 4:05-cv-40142-FDS    Document 19-3    Filed 08/29/2006    Page 2 of 5

Page 2
2000 DNH 196; 2000 U.S. Dist. LEXIS 16456, *;
12 Am. Disabilities Cas. (BNA) 1094; 25 Employee Benefits Cas. (BNA) 1401

ness limitation." This limitation provides that "benefits for disability due to mental illness will not exceed 24 months of monthly benefit payments." Id. at 361. "Mental illness" is defined as "mental, nervous or emotional diseases or disorders of any type." Id.

From December 1994 until June 1995, Pelletier received short-term disability benefits. On May 15, 1995, Unum received Pelletier's application for long-term disability benefits, in which his treating psychiatrist, Dr. Fortier, indicated that Pelletier was disabled because he suffered from Major Depressive Disorder and Opioid Dependence. n2 On [*4] June 15, 1995, Unum approved Pelletier's claim for long-term disability benefits, effective June 8, 1995. At the same time, Unum notified Pelletier of its conclusion that his disability fell within the plan's mental illness limitation. Unum explained that pursuant to the terms of the limitation, Pelletier's benefits would cease on June 7, 1997.

> n2 On December 12, 1994, Pelletier entered a chemical dependency rehabilitation program at St. Mary's Regional Medical Center. He was released from the program on January 13, 1995.

On June 6, 1997, Unum notified Pelletier that he had exhausted his twenty-four months of disability payments and explained the procedure to follow to seek review of the decision to terminate his benefits. On February 4, 1999, Pelletier requested that Unum's LTD Quality Review Section review his file and reclassify his disability so that it would not be subject to the mental illness limitation. Unum denied Pelletier's appeal, concluding that "the information within Mr. Pelletier's file [*5] indicates that he was paid 24 months of benefits under the [mental illness] limitation due to his diagnosis of Major Depression and Panic Disorder. We have reviewed the recent narrative statement submitted by Dr. Fortier and have determined that the previous termination decision was correct." Id. at 228.

## II. STANDARD OF REVIEW

Summary judgment is appropriate if the record, viewed in the light most favorable to the non-moving party, shows that no genuine issues of material fact exist and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); *Commercial Union Ins. Co. v. Walbrook Ins. Co.*, 7 F.3d 1047, 1050 (1st Cir. 1993). A material fact is one "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986). A genuine factual issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. In a case involving construction of contract language, summary judgment is appropriate "only if the meaning of the language is clear," in light of the [*6] surrounding circumstances and the undisputed evidence of the parties' intent. See *Rodriguez-Abreu v. Chase Manhattan Bank, N.A.*, 986 F.2d 580, 586 (1st Cir. 1993) (finding plan language ambiguous).

I apply this standard in ruling on Unum's motion for summary judgment. n3

> n3 Fleet's motion to dismiss is subject to a different standard of review than Unum's motion for summary judgment. See *Aybar v. Crispin-Reyes*, 118 F.3d 10, 13 (1st Cir. 1997) (describing Rule 12(b)(6) standard). In this case, however, the outcome is the same under either standard. Pelletier and Unum agree that Fleet cannot be held liable based on ERISA, see Pl. Paul Pelletier's Mem. of Law in Opp'n to Def. Fleet's Mot. to Dismiss (doc. no. 19) at 13; Stipulation (doc. no. 20). Further, Pelletier's § 2159-A claim does not apply to Fleet because § 2159-A covers only insurers. Finally, Pelletier's ADA claims fail not because of a lack of evidence, but rather because the ADA does not prevent an insurer from offering disability policies with different coverage periods for mental and physical disabilities.

[*7]

## III. DISCUSSION

Pelletier argues that the mental illness limitation contained in Unum's long-term disability policy violates Titles I and III of the ADA because it treats the mentally disabled and physically disabled differently. Pelletier also claims that the policy is inconsistent with *Me. Rev. Stat. Ann. Tit. 24-A § 2159-A* for the same reason. Finally, Pelletier asserts that Fleet and Unum violated ERISA by terminating his benefits because his disability was not caused by a "mental illness."

### A. The ADA Claims

The central question presented by Pelletier's ADA claims is whether a long-term disability insurance plan which is open to both disabled and non-disabled employees on the same terms nevertheless violates the ADA if it fails to provide equivalent coverage for mental and physical

Case 4:05-cv-40142-FDS    Document 19-3    Filed 08/29/2006    Page 3 of 5

Page 3
2000 DNH 196; 2000 U.S. Dist. LEXIS 16456, *;
12 Am. Disabilities Cas. (BNA) 1094; 25 Employee Benefits Cas. (BNA) 1401

disabilities. n4 I join seven circuit courts in concluding that the answer to this question is no. See, e.g., *EEOC v. Staten Island Sav. Bank,* 207 F.3d 144, 148 (2d Cir. 2000) (Title I); *Weyer v. Twentieth Century Fox Film Corp.,* 198 F.3d 1104, 1116 (9th Cir. 2000) (Titles I and III); *Kimber v. Thiokol Corp.,* 196 F.3d 1092, 1101-02 (10th Cir. 1999) [*8] (Title I); *Lewis v. Kmart Corp.,* 180 F.3d 166, 170-71 (4th Cir. 1999), cert. denied, 528 U.S. 1136, 145 L. Ed. 2d 929, 120 S. Ct. 978 (2000) (Title I); *Ford v. Schering-Plough Corp.,* 145 F.3d 601, 608-10 (3d Cir. 1998), cert. denied, 525 U.S. 1093, 142 L. Ed. 2d 704, 119 S. Ct. 850 (1999) (Title I); *Parker v. Metropolitan Life Ins. Co.,* 121 F.3d 1006, 1019 (6th Cir. 1997), cert. denied, 522 U.S. 1084, 139 L. Ed. 2d 768, 118 S. Ct. 871 (1998) (Title III); *EEOC v. CNA Ins. Companies,* 96 F.3d 1039, 1044-45 (7th Cir. 1996); cf. *McNeil v. Time Ins. Co.,* 205 F.3d 179, 186-89 (5th Cir. 2000) (health insurance plan caps for AIDS do not violate Title III); *Modderno v. King,* 317 U.S. App. D.C. 255, 82 F.3d 1059, 1060-62 (D.C. Cir. 1996) (cap on health insurance benefits for mental disability does not violate Section 504 of the Rehabilitation Act, 29 U.S.C. § 794); but see *Boots v. Northwestern Mut. Life Ins. Co.,* 77 F. Supp. 2d 211, 215-220 (D.N.H. 1999) (limitations on coverage under disability plan for mental disabilities [*9] potentially violates both Titles I and III).

> n4 I assume for purposes of analysis that: (1) defendants are "covered entities" under Title I of the ADA; (2) Pelletier is a "qualified individual with a disability" under Title I; and (3) defendants are "place[s] of public accommodation" under Title III of the ADA. See, e.g., *Carparts Distribution Center, Inc. v. Automotive Wholesaler's Ass'n of New England, Inc.,* 37 F.3d 12, 16-20 (1st Cir. 1994).

In reaching this conclusion, I find particularly persuasive the Second Circuit's recent analysis of the issue in *Equal Employment Opportunity Commission v. Staten Island Savings Bank,* 207 F.3d 144 (2d Cir. 2000). There, the court held that Staten Island Savings Bank's long-term disability plan did not violate Title I of the ADA even though it limited disability benefits for "mental or emotional conditions" to two years while providing extended benefits for other types of disabilities. See *id. at 152-53.* The court [*10] reached this conclusion because it determined that: (1) the statutory language at issue in Title I does not clearly prevent an employer from adopting a disability plan that provides reduced benefits for disabilities arising from mental illness, see *id. at 149-50;* (2) the ADA's legislative history strongly suggests that Congress did not intend to restrict an employer's ability to impose special limitations on disability insurance coverage for disabilities that result from mental illness, see *id. at 150;* (3) the existence of the ADA's safe harbor provision, 42 U.S.C. § 12201, does not support the view that disability plans cannot contain special limitations on coverage for mental illness, see *id. at 150-51;* (4) while the Supreme Court's recent decision in *Olmstead v. L. C.,* 527 U.S. 581, 119 S. Ct. 2176, 2186 n. 10, 144 L. Ed. 2d 540 (1999), suggests that the ADA generally prohibits individualized discrimination based on a particular disability or category of disabilities as well as discrimination between the disabled and the non-disabled, the reasoning underlying Olmstead's holding does not invalidate [*11] the type of disability insurance policy that is at issue in this case, see *207 F.3d at 151;* (5) the EEOC's informal Interim Guidance on Application of the ADA to Health Insurance (June 8, 1993), reprinted in Fair Employment Practices Manual 405:7115 (BNA 2000), is not entitled to interpretative deference in a case such as the one at issue here because it does not cover disability insurance plans and it is in conflict with the EEOC's published "Interpretive Guidance on Title I of the Americans With Disabilities Act," 29 C.F.R. part 1630, App. 1630.5, see *id. at 151-52;* and (6) Congress enacted the ADA with an awareness of the "historic and nearly universal practice inherent in the insurance industry of providing different benefits for different disabilities" and, accordingly, it is reasonable to presume that Congress would have spoken more clearly had it intended to prohibit such a well-established practice, see *id. at 149.*

Because I find the Second Circuit's analysis of the issue persuasive with respect to both Title I and Title III, I reject Pelletier's ADA claims. Both sides in this important debate offer legitimate public policy arguments to support their respective [*12] positions. Except in limited circumstances not present here, however, such public policy debates must be resolved by the legislative branch. In this case, the statutory language that governs my analysis, the legislative history that bears on the question and the historical backdrop against which the ADA was enacted, all support the view that Congress did not intend to prevent employers from offering long-term disability plans with special coverage limitations for mental disabilities when it enacted the ADA. Accordingly, I grant both Fleet's motion to dismiss and Unum's motion for summary judgment with respect to Pelletier's ADA claims.

**B. The Section 2159-A Claim**

*Maine Revised Statutes Annotated Title 24-A § 2159-A* provides that No insurer authorized to transact business

Case 4:05-cv-40142-FDS    Document 19-3    Filed 08/29/2006    Page 4 of 5

Page 4
2000 DNH 196; 2000 U.S. Dist. LEXIS 16456, *;
12 Am. Disabilities Cas. (BNA) 1094; 25 Employee Benefits Cas. (BNA) 1401

in this state may refuse to insure or continue to insure, limit the amount, extent or kind of coverage available to an individual or charge an individual a rate different from that normally charged for the same coverage solely because the insured or the applicant for insurance has a physical or mental handicap, as defined in Title 5, Section 4553, subsection 7-A, other than blindness or partial [*13] blindness, unless the basis for that action is clearly demonstrated through sound actuarial evidence.

*Me. Rev. Stat. Ann. Tit. 24-A § 2159-A* (West 2000). Pelletier invokes this provision in arguing that Maine law bars an insurer from offering disability insurance policies that provide different coverage periods for mental and physical disabilities.

The short answer to Pelletier's claim is that it requires a reading of § 2159-A that the statutory language simply will not bear. n5 Section 2159-A requires insurers to provide coverage on the same terms and conditions to disabled and non-disabled persons unless "sound actuarial evidence" exists to justify differential treatment. The statutory language, however, does not limit the kind of coverage that an insurer can offer.

> n5 I need not delve into the legislative history of § 2159-A because the statutory language plainly answers the question the case presents. See *Kapler v. Kapler, 2000 ME 131, 755 A.2d 502, 508 (Me. 2000)*.

All [*14] of Fleet's employees are eligible for disability benefits under Unum's policy under the same terms and conditions. Thus, the policy is not inconsistent with the requirements of § 2159-A even though it provides for different coverage periods for physical and mental disabilities.

**C. The ERISA Claim**

Pelletier also challenges Unum's termination of his long-term disability benefits under ERISA. n6 Pelletier's argument proceeds in several steps. First, he argues that Unum's decision is subject to *de novo* review because the plan does not grant Unum discretion to interpret plan terms or determine a claimant's eligibility for benefits. Second, he asserts that the term "mental illness" is ambiguous. Third, he argues that one plausible way to construe the term is to limit it to behavioral conditions with no known organic cause. Fourth, he asserts that his disability was not the result of a mental illness under the proposed definition because the evidence demonstrates that the conditions that produced his disability have an organic cause. Finally, he argues that the doctrine of *contra proferentem* applies and, therefore, the court must adopt his proposed definition [*15] because it is plausible and favors his position.

> n6 Fleet moved to dismiss Pelletier's ERISA claim on the ground that it was not a proper party to such a claim. See Mem. in Supp. of Def. Fleet Financial Group, Inc.'s Mot. to Dismiss (doc. no. 17) at 15-17. In his opposition, Pelletier conceded that Unum was the party solely responsible for any liability with respect to his ERISA claim. See Pl. Paul Pelletier's Mem. of Law in Opp'n to Def. Fleet's Mot. to Dismiss (doc. no. 19) at 13. Unum subsequently stipulated that "should there be a determination [that] there is liability for payment of benefits for a disability covered by the policy, Unum is the responsible party." Stipulation (doc. no. 20). Accordingly, I grant Fleet's motion to dismiss with respect to Pelletier's ERISA claim.

Assuming for purposes of analysis that Pelletier correctly claims that: (1) Unum's decision is subject to *de novo* review; (2) the term "mental illness" is ambiguous in some contexts; and (3) the doctrine of [*16] *contra proferentem* applies to insurance policies governed by ERISA, I nevertheless reject Pelletier's ERISA claim because I cannot reasonably construe the term "mental illness" as defined in the Unum policy to apply only to conditions with no known organic cause. n7

> n7 Many of the cases holding that the term "mental illness" is ambiguous because it could be construed to apply only to conditions with no known organic cause are distinguishable because they interpreted policies that did not define "mental illness." See, e.g., *Phillips v. Lincoln Nat'l Life Ins. Co., 978 F.2d 302, 310-11 (7th Cir. 1992); Kunin v. Benefit Trust Life Ins. Co., 910 F.2d 534, 541 (9th Cir. 1990)*. Moreover, even if these decisions were not distinguishable, I would not follow them because they are unpersuasive. Instead, I agree with the Fifth and Eighth Circuits which have held that the term "mental illness" is unambiguous and is properly applied to disorders typically identified as "mental," irrespective of their causes. See *Tolson v. Avondale Indus., Inc., 141*

Case 4:05-cv-40142-FDS   Document 19-3   Filed 08/29/2006   Page 5 of 5

Page 5

2000 DNH 196; 2000 U.S. Dist. LEXIS 16456, *;
12 Am. Disabilities Cas. (BNA) 1094; 25 Employee Benefits Cas. (BNA) 1401

F.3d 604, 609-10 (5th Cir. 1998); *Prudential Ins. Co. of Am. v. Doe*, 140 F.3d 785, 791 (8th Cir. 1998).

This reasoning is in accord with the First Circuit's admonition that language in an ERISA-regulated insurance policy or plan be given a meaning that comports with the interpretation given by the average person. See *Wickman v. Northwestern Nat'l Ins. Co.*, 908 F.2d 1077, 1084 (1st Cir. 1990); *Burnham v. Guardian Life Ins. Co. of Am.*, 873 F.2d 486, 489-91 (1st Cir. 1989). "Mental illness" is defined broadly by the policy at issue here, and therefore the average person would interpret it broadly as well. See id.; but see *Dorsk v. Unum Life Ins. Companies of Am.*, 8 F. Supp. 2d 19, 21-22 (D. Me. 1998).

Pelletier cites *Dorsk*, 8 F. Supp. 2d 19, to support the contrary view. I find Dorsk unpersuasive for two reasons. First, the court did not give appropriate weight to the policy's definition of "mental illness." See *id. at 21-22, 22 n.3*. Second, the court chose not to rely on a layperson's interpretation of the term "mental illness" but instead focused on "the need for medical expertise" in determining whether an illness constitutes a mental illness. See *id. at 21 n.3*. This approach is at odds with the First Circuit's guidance on this issue. See *Wickman, 908 F.2d at 1084* ("terms must be given their plain meanings, meanings which comport with the interpretations given by the average person") (emphasis added).

[*17]

The mental health limitation evidences Unum's underwriting determination to offer a policy under which beneficiaries who become disabled as a result of mental illness are eligible to receive benefits for a shorter period than beneficiaries who become disabled for other reasons. This underwriting decision would be rendered meaningless if the term "mental illness" were to be read so narrowly as to exclude every mental disorder that may be deemed to have an organic cause. See *Lynd v. Reliance Standard Life Ins. Co.*, 94 F.3d 979, 984 (5th Cir. 1996). This is especially true if, as Pelletier suggests, the concept of organic cause were construed to include all conditions that result even in part from hereditary and neurobiological factors. n8

n8 According to Dr. Fortier, the causes of Pelletier's conditions, major depressive disorder and panic disorder, include "hereditary, neurobiological factors as well as psychosocial factors." R. at 180. Dr. Fortier noted that "imbalance[s] in neurotransmitter systems have been implicated in the pathophysiology" of both major depressive disorder and panic disorder. Id. Moreover, he observed that "studies indicate a genetic contribution to the development of panic disorder. Major depressive disorder co-exists frequently (50-65%) in individuals with panic disorder." Id. Aside from pointing to Dr. Fortier's opinion, which is based on general data, Pelletier has not presented any evidence indicating that his conditions actually have an organic or physical cause. The absence of test results or similar evidence further undermines the reasonableness of adopting Pelletier's interpretation of the term "mental illness" in this case. See *Blake v. Unionmutual Stock Life Ins. Co. of Am.*, 906 F.2d 1525, 1530 (11th Cir. 1990) (finding plaintiff suffered from a mental, not physical, disorder because she failed to present evidence of "an organic causation for [her] illness," postpartum psychosis).

[*18]

IV. CONCLUSION

For the foregoing reasons, I grant Fleet's motion to dismiss (doc. no. 17) and Unum's motion for summary judgment (doc. no. 16). SO ORDERED.

Paul Barbadoro

Chief Judge

September 19, 2000